300 So.2d 575 (1974)
Theodore DELAHOUSSAYE, Plaintiff-Appellee,
v.
ALLEN ACTION AGENCY, INC., et al., Defendants-Appellants.
No. 4656.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1974.
Rehearing Denied October 10, 1974.
*576 Walter M. Hunter, Jr., Alexandria, for defendants-appellants.
J. Winston Fontenot, Lafayette, for plaintiff-appellee.
Joseph A. Koury, Lafayette, for plaintiff-appellee.
Before FRUGÉ, CULPEPPER and WATSON, JJ.
CULPEPPER, Judge.
Theodore Delahoussaye filed this suit against his employer, Allen Action Agency, Inc., to recover workmen's compensation benefits, penalties, and attorney's fees. After trial on the merits, judgment was rendered awarding him compensation benefits for total and permanent disability due to traumatic neurosis and/or conversion hysteria. The court also awarded penalties and $3,000 for attorney's fees. Defendants appealed. Plaintiff answered the appeal, asking this court to increase the award of attorney's fees by $750 for services rendered on appeal.
The substantial issues are: (1) Is petitioner entitled to workmen's compensation benefits for total and permanent disability even though the evaluation of his physical and mental condition by the physicians was based upon erroneous medical history related by him?
(2) Is petitioner entitled to penalties and attorney's fees, and, if so, how much?
(3) Is petitioner entitled to an increase in the amount awarded as attorney's fees for services rendered on appeal?
The parties entered the following stipulations: That petitioner received an injury which arose out of and during the course and scope of his employment for Allen Action Agency, Inc. on November 9, 1971; that his average weekly wages were such that he would be entitled to workmen's compensation benefits in the amount of $41.50 per week; that the defendants began the payment of weekly benefits at the rate of $41.50 on November 9, 1971, and continued them through February 15, 1972, when they were discontinued; that payments were reinstituted on August 27, 1973, by forwarding a check to counsel for plaintiff to bring the benefits up to date from February 15, 1972; and that payments were continued from August 27, 1973 to January 15, 1974, at which time they were again discontinued by defendants.
*577 On November 9, 1971, petitioner was attempting to start a tractor-type mowing machine. As it started, it lurched forward pinning petitioner's right hand and arm between the wheels of the tractor and the fender of a nearby pickup truck. After he was freed, plaintiff was taken immediately to Dr. J. L. Comeaux in New Iberia for emergency treatment. Dr. Comeaux cleaned the laceration of petitioner's right hand and right little finger, applied first aid and sutured the laceration. His hand was then wrapped in an Ace bandage.
After about one week, the sutures were removed and a short arm plaster cast was placed on his arm. The cast was removed, Dr. Comeaux prescribed physical therapy, ultra-sound, and exercise of petitioner's right hand and fingers. The doctor testified that his recovery was normal and that his hand and fingers were responding to physical therapy. However, when Dr. Comeaux began discussing with plaintiff a discharge for return to work, plaintiff reapplied the Ace bandage and refused to continue physical therapy or any other treatment.
Petitioner was discharged from treatment by Dr. Comeaux on February 1, 1972, with instructions that he was able to return to work but would have a ten per cent partial disability, which the doctor felt would eventually recover completely. Petitioner has not worked since the day of his accident.
In April of 1972, he hired an attorney who sent him to be examined by Dr. Fred C. Webre, an orthopedic surgeon of Lafayette. On July 14, 1972, Dr. Webre conducted a standard orthopedic examination, including x-rays of the right hand and fingers as well as the right forearm. From his examination, Dr. Webre concluded that petitioner was not able to return to work in his previous occupation as a laborer because his hand was useless to him. He also reached an opinion that petitioner had an emotional problem which "is more disabling than an orthopedic one."
On July 14, 1972, Dr. Webre sent a written report of the results of his examination and conclusions to counsel for the claimant, but no copy was furnished to defendant at that time. Counsel for petitioner made demand upon defendants to resume payment of compensation benefits. Based upon the conclusive report made by Dr. Comeaux that petitioner could return to work, defendant denied the claim.
On November 8, 1972, petitioner filed suit. The record indicates that the attorney for defendants did not receive the report of Dr. Webre until it was sent to him by counsel for petitioner in a letter dated November 30, 1972, which was after suit had been filed. As a result of the findings by Dr. Webre, defendants sent plaintiff for psychiatric examination to Dr. James H. Blackburn, a qualified specialist in the field of psychiatry.
Petitioner was first seen by Dr. Blackburn on November 7, 1972. At that time he was complaining of complete uselessness of his right hand and fingers, numbness of the hand and a cold sensation in his hand constantly. Dr. Blackburn conducted a psychiatric examination which included history of the patient, personal observation of the right hand and fingers, passive movement of the fingers, and a mental examination. The doctor found that the petitioner had received a rather significant injury to his right forearm and hand with resulting loss of functional ability and discomfort. He further concluded that the patient "has continued to hold his hand in the flexed position primarily of a conversion hysteria ..." These findings were sent to petitioner's counsel in a report dated September 7, 1973. In that report Dr. Blackburn indicated that he felt the patient's prognosis was good and that possibly "hypnosis of deep enough intensity (could be used) to alleviate the conversion hysteria." He also stated that petitioner's condition was "precipitated by and is directly related to his accident sustained in November of 1971."
*578 Totally, Mr. Delahoussaye was seen four times by Dr. Webre and twice by Dr. Blackburn. In their later examinations, both doctors conducted pin prick tests and other tests to determine whether his condition was genuine or whether he was malingering. They both concluded that his hand and arm had no reaction to the pin pricks, that his fingers could not be moved from their rigid position by passive manipulation, that he was not a malingerer, and that he exhibited the classic symptom of conversion hysteria, belle en difference, i. e., he was not concerned whether his arm could be used again or not, and even suggested that he might allow it to be amputated. Both doctors concluded that his right arm and hand were permanently useless and thus he could not return to his occupation as a manual laborer.
Petitioner was also seen by Dr. Gilles R. Morin, a psychiatrist in Lake Charles, who, in a report dated June 28, 1973, to counsel for defendants, reached basically the same conclusions as those reached by Drs. Blackburn and Webre.
Defendants argue that petitioner is not entitled to compensation benefits because the medical opinions, that he is totally and permanently disabled, were based on false statements by plaintiff to the doctors. Appellants submit that under the jurisprudence of this state Mr. Delahoussaye "is simply not entitled to workmen's compensation benefits as he has proved himself to by unworthy of belief and as the claim in question arises out of very suspicious factual circumstances, i. e., the alleged sudden change in Mr. Delahoussaye's condition upon his being notified that he was soon to be released from treatment."
Defendant's arguments are predicated upon the fact that Mr. Delahoussaye told Drs. Morin, Webre and Blackburn that the plate in his right forearm was placed there by Dr. Comeaux, during surgery following this particular accident, and was necessary to cure the injuries received as a result of the accident in 1971. Actually, the plate was placed in his forearm after an automobile accident in 1965.
Each doctor stated that the fact that Mr. Delahoussaye did not tell them this information would not alter his diagnosis that the petitioner is totally and permanently disabled. In fact, Dr. Blackburn states that this information would probably confirm his diagnosis of conversion reaction.
Both Dr. Webre and Dr. Blackburn testified that during their examinations they were more interested in the fact that Mr. Delahoussaye's arm and hand remained immobilized for so long a time than in the exact nature and extent of his injuries.
Mr. Delahoussaye is 59 years of age and has little formal education. His mother died when he was young and he was forced at an early age to work to help support his large family. Petitioner has worked as a manual laborer all of his life. He was not even aware that a plate had been put in his forearm in 1965 until informed of it by his daughter-in-law in 1971, after the mowing machine accident. As far as plaintiff knew, Dr. Comeaux had put the plate in his forearm. Confused, he may have been, but untruthful, he was not. The district court was clearly correct in its finding that petitioner was totally and permanently disabled.
Penalties and attorney's fees are awarded only when the refusal to pay benefits is arbitrary, capricious, or without probable cause. LSA-R.S. 22:658. In Guillory v. Travelers Insurance Company, 282 So.2d 600, 606 (La.App. 3rd Cir. 1970) we said:
"Our law is settled that an award of statutory penalties and attorney's fees against a defendant insurer for failure to pay workmen's compensation to the claimant is not proper where the medical evidence available to the insurer at the time the suit was filed showed no disability, Charleston v. American Insurance Company, 136 So.2d 495 (La.App. 1st Cir. 1961); Square v. Liberty Mutual *579 Insurance Co., 270 So.2d 335 (La.App. 1st Cir. 1972)."
We found in Guillory that the medical evidence available at the time suit was filed showed that the claimant had recovered from his injuries and was able to return to work. The Supreme Court reversed on the facts, finding that the claimant was disabled at the time suit was filed. Guillory v. Travelers Insurance Company, 294 So.2d 215 (La.1974). However, that court did not disturb the rule of law stated by us in Guillory.
In the present case, Dr. Comeaux, the general practitioner, released Mr. Delahoussaye from his care on February 1, 1972, and reported to the defendant insurer that he had been advised to return to work. On February 15, 1972, defendant insurer ceased payment of benefits, based upon the report issued by Dr. Comeaux. Although claimant had been examined by Dr. Webre on July 14, 1972, and Dr. Webre had issued a report to claimant's attorney in which he concluded that Mr. Delahoussaye was totally and permanently disabled at the time suit was filed on November 8, 1972, the defendant insurer had no knowledge of Dr. Webre's report at the time suit was filed. Defendant did not receive Dr. Webre's report until furnished a copy by claimant's counsel on November 30, 1972. Therefore, when suit was filed all medical data available to the defendant indicated the claimant was able to return to work.
On August 27, 1973, the defendant insurer paid all benefits due from February 15, 1972 to August 27, 1973 and resumed the payment of weekly benefits.
The depositions of Drs. Webre and Blackburn were taken on November 7, 1973, both of which indicated that the claimant was totally and permanently disabled. Nevertheless, defendant insurer again ceased the payment of weekly benefits as of January 15, 1974. All medical evidence available at that time indicated that claimant was disabled. From January 15, 1974 to the present, the refusal of defendant to pay the weekly benefits is clearly arbitrary, capricious, and without probable cause.
Normally, penalties are computed on the entire amount of weekly compensation awarded, not just the portion of unpaid compensation as to which the defendant was arbitrary, Williams v. Travelers Insurance Co., 157 So.2d 356 (La.App. 3rd Cir. 1963). Under this rule, Mr. Delahoussaye is entitled to recover penalties on the compensation due from February 15, 1972 to August 27, 1973, as well as upon that due after January 15, 1974.
The lower court awarded $3,000 as attorney's fees. Plaintiff, in his answer to the appeal, requests an increase in attorney's fees for services in connection with this appeal. We think the request has merit and will increase the attorney's fees to $3,500, Ryder v. Insurance Company of North America, 282 So.2d 771 (La.App., 3rd Cir. 1973); and Thibodeaux v. Associated Distributing Company, 260 So.2d 46 (La.App. 3rd Cir. 1972).
For the reasons assigned, the judgment appealed from is amended so as to increase the award for attorney's fees to the sum of $3,500. Otherwise, the judgment is affirmed. All costs of this appeal are assessed against defendants.
Affirmed, as amended.