355 So.2d 927 (1978)
Samuel HAUGHTON
v.
FIREMAN'S FUND AMERICAN INS. COMPANIES.
No. 60765.
Supreme Court of Louisiana.
March 6, 1978.
Jerome P. Halford, New Orleans, for plaintiff-applicant.
Lawrence J. Duplass, Johnston & Duplass, New Orleans, for defendant-respondent.
DIXON, Justice.
Samuel Haughton brought this action claiming workmen's compensation for a total disability allegedly caused by a work related injury. The trial court judgment denying compensation was affirmed by the Court of Appeal. 349 So.2d 385 (La.App. 4th Cir. 1977). We granted certiorari to review that judgment on October 14, 1977.[1]
Samuel Haughton was employed as a common laborer by the Jefferson Parish Sewerage Department. On November 4, 1974 he stumbled on a stick lying on the ground while carrying one end of a heavy timber and fell, breaking his left thigh just above the knee. He was hospitalized, and the fracture was surgically reduced and fixed with a steel plate and screws.
*928 Tests made after the initial hospitalization suggested a bone marrow disorder, which was subsequently diagnosed as multiple myeloma. The break was thought to have been a "pathological fracture," caused by weakening of the walls of the bone. In addition to the orthopedic treatment, Haughton was placed under the care of a hematologist for the control and treatment of the myeloma. The hematologist did not testify, nor were his reports introduced in evidence.
The orthopedic surgeon testified to a long period of recuperation and treatment, during which Haughton complained of some pain and weakness, reaching a point at which he could walk with a cane, depending on muscle relaxants and tranquilizers for control of the pain. The orthopedist found that Haughton could only bend his leg to about a 90 degree angle, and that the steel plate "probably impinges against the lateral border of the patella periodically." The doctor ascribed a 25% residual disability to the left leg of Haughton "as a result of the injury and subsequent surgery."
On June 4, 1976 the defendant insurance company terminated payment to Haughton. The claims manager testified that two medical reports prompted the termination. One was from the orthopedist, saying that the fracture had healed; the other was from the hematologist, relating his opinion that Haughton "will never be able to return to work because of his myeloma." [2]
The orthopedic surgeon testified to the effect that the fracture had healed, but that Haughton's "myeloma condition does preclude his return to work." On this testimony, the trial judge found that Haughton's myelomata, not the accident, caused his disability. The Court of Appeal concluded that the "medical evidence is controlling in this case and that plaintiff's present disability is not causally connected to the work-related accident." Haughton v. Fireman's Fund, 349 So.2d 385, 387.
Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence.
The orthopedic surgeon's conclusion that Haughton could have returned to work in the absence of the myelomata is inconsistent with his other findings. First, Haughton probably would not have suffered the broken leg (the "pathological fracture") except for the weakening of the bone at the fracture site by the multiple myeloma. Second, the conclusion ignored other findings by the physician, that Haughton had a 25% disability of the left leg, could hardly bend it more than 90 degrees, and was unstable and painful. There was no medical evidence that these symptoms, nor the necessity for the cane in walking, were caused by anything other than the fracture. Finally, there was only slight consideration given to the nature of Haughton's employment, which was of the most strenuous nature.
The uncontradicted medical opinions in the record do establish that the multiple myeloma was disabling, but the orthopedist's opinion that the fracture was not disabling is contradicted by his own findings.
Professor Malone writes:
"In the trial of compensation cases medical experts are frequently requested to give their opinions as to the extent of the *929 disability involved. The estimate of disability offered by the medical expert should not be confused with the estimate of disability which must eventually be made by the judge. The medical expert defines disability in terms of the physiological injury and its effect upon the performance of the mechanical operations which the claimant can perform prior to and after the accident. The material upon which he draws is largely that of anatomy, physiology, and body mechanics. . . .
"On the other hand, a court is called upon to determine disability according to a legal definition drawn by interpretation from the compensation statute furnished by the legislature. The law fixes disability in terms of loss of earning capacity, which includes the extent of the physiological impairment as only one factor. The function of the judge is much broader than that of the medical man, for loss of earning capacity, which is the eventual touchstone of all legal definitions of disability, can be determined only by reference to the state of the labor market, hiring practices, the humanity of obliging a man to work in pain, and other broad policy considerations which the physician is not equipped nor authorized to evaluate.
"Consequently, the court may properly find that a worker is totally disabled although the medical witnesses are in substantial agreement that the disability is only twenty or thirty percent. . . ." Malone, Louisiana Workmen's Compensation, § 272 (Supp.1964).
See also Johnson v. The Travelers Insurance Co., 284 So.2d 888 (La.1973); Futrell v. Hartford Accident & Indemnity Co., 276 So.2d 271 (La.1973).
If an accident causes a disability from which a workman would have recovered except for further disability produced by a separate, intervening cause, there is no liability for compensation beyond the disability produced by the job connected accident. But here there is no evidence of an intervening cause. Nothing happened to Haughton after the accident except his failure to recover. He did not suffer a new accident or disease. The disease he had when the accident occurred contributed to the injury itself.
When there is an accident and a resulting disability without any intervening cause, it is presumed that the accident caused the disability. This simple guide, plainly stated in Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969), we affirmed in Johnson v. The Travelers Insurance Co., 284 So.2d 888 (La.1973) and reaffirmed in Gradney v. Vancouver Plywood Co., 299 So.2d 347 (La.1974). The presumption is not irrebuttable, but its effect is to shift the burden of proof to the defendant. This burden was not enforced by the courts below, and the defendant has failed to prove that Haughton's accident did not cause his disability.
Therefore, the judgment of the Court of Appeal is reversed, and there is now judgment in favor of the substituted plaintiffs and against defendant, Fireman's Fund American Insurance Companies, finding that Samuel Haughton was totally and permanently disabled by the accident of November 4, 1974, all at defendant's cost.
The case is remanded to the district court for computation of the amount due plaintiffs, and for further proceedings not inconsistent with the views expressed here.
NOTES
[1] On December 6, 1977, while the case was pending before this court, Samuel Haughton died of causes unrelated to the injury for which he claimed compensation. We granted a motion to substitute Lula Mae Davis, widow of Samuel Haughton, and Cora Haughton Marzett, Samuel Haughton, Jr. and Lillie Haughton Dede, Samuel Haughton's surviving children, as parties plaintiff.
[2] ". . . `It has come to my attention that I have not answered your letter of March 17, 1976 in regard to Mr. Samuel Haughton. I read Dr. Fleming's opinion and certainly agree; at the present time, Mr. Haughton is disabled from the point of view of this multiple myeloma. It is difficult for me as a hematologist to assess the functional capacity of his leg in relationship to his job. However, it is my opinion that this man will never be able to return to work because of his myeloma. He requires constant therapy for this disorder and at the present time, becomes symptomatic during and between treatments'

Q Go on.
A `I hope the above allI hope the above will be helpful to you in fairly assessing this compensation problem.
If I can answer any additional specific questions, please do not hesitate to let me know.'
Q Do you have any subsequent reports from Dr. Brown?
A No, I do not."