430 So.2d 1298 (1983)
Michael C. THUM
v.
MRO SERVICES COMPANY, INC., et al.
No. 82 CA 0875.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Writ Denied June 17, 1983.
*1299 Keith Jones, Baton Rouge, for plaintiff.
R. Michael Caldwell, Baton Rouge, for defendants.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
Plaintiff, Michael C. Thum, filed suit against defendant, MRO Services Company, Inc.[1], seeking workmen's compensation benefits for total and permanent disability resulting from exposure to phosgene gas. The trial court found that plaintiff was totally and permanently disabled as a consequence of his exposure to phosgene gas while in the course and scope of his employment.
In October of 1980, plaintiff and a coworker, Foster Qualls, were installing a phosgene alarm system at the BASF Wyandotte plant in Geismar, Louisiana, when a phosgene leak occurred. The men became aware of the leak when Earl Laird, the foreman, and Bob McDonald began to honk the horn and signal to them from a truck. They were unable to breathe properly for some period of time and remember coughing while they were staggering to the truck. Immediately, Earl Laird took the men to the first aid station where they *1300 removed the docimeters from their hard hats. The docimeters were worn for the purpose of detecting phosgene gas exposure and had significantly changed color from white to bright orange. The nurse noted that they had been exposed to phosgene gas but stated that their exposure had not been enough to worry about and released them.
Barbara Ann Thum, plaintiff's wife, testified that plaintiff came home from work on the date of the phosgene incident coughing, nervous and experiencing pains in his chest. Although these symptoms continued, plaintiff did not immediately see a doctor because neither he nor his wife knew the effects of phosgene gas or whether or not they should be concerned. They finally consulted a doctor in January of 1981.[2] Mrs. Thum testified that since the phosgene incident, she had noticed an almost total change in plaintiff. Prior to the incident, he was a very hard worker, conscientious, and a "go-getter." Since the incident, he found it difficult to get through one day at a time.
Plaintiff testified that immediately after the accident, he began coughing up a black substance. Although plaintiff had a physical three months prior to the accident which indicated that he was in good health, he stated that since the phosgene exposure he had experienced a number of physical and psychological problems. In addition to coughing up black phlegm, plaintiff has had fever, skin rashes, insomnia, prostate and kidney problems, lost forty pounds, and has had "anxiety attacks" characterized by total unreality, sweaty palms, heart palpitations, sharp pains in the lower back, and the feeling that death was imminent. Despite these problems, plaintiff continued to work until May of 1981, when he had a total collapse at work and was taken to the emergency room in Donaldsonville. Plaintiff stated that he has seen a number of doctors for the various problems that he has experienced but that none of them wanted to discuss the phosgene exposure. Plaintiff had not had an accident prior to the phosgene exposure nor has he had one since. Yet, he continues to experience these problems.
Dr. Henry Ehrlich, plaintiff's psychiatrist, diagnosed plaintiff as experiencing a stress disorder secondary to organic factors and a traumatic incident. He testified that the main stress was the physical injury, i.e., the coughing, the insomnia, the lower back problems, and the weight loss, which were directly related to the phosgene exposure. In Dr. Ehrlich's opinion, plaintiff is presently disabled and unable to work due to lack of concentration, nervousness, irritability, and inability to think. He expects the disability to continue for a period of time but is not sure how long said disability will last. Dr. Ehrlich thinks that plaintiff's symptoms are real, not feigned. He stated:
"I feel that the present symptoms are definitely associated to the accident."
Both Foster Qualls and Earl Laird testified that prior to the phosgene incident, plaintiff was a good employee and had a good attendance record; but after the accident, he became nervous, lost weight, and progressively became sick. Foster Qualls additionally testified that as a result of his own phosgene exposure, he had experienced back trouble and insomnia, which he and the others thought was related to the phosgene.
The deposition of Dr. Thomas M. DeBlanc, a urologist, was entered into the record. Dr. DeBlanc first saw plaintiff in June of 1981 and conducted a battery of tests. Basically, all of the test results were normal except for one liver function test which was slightly elevated. Plaintiff's prostrate was enlarged and inflamed. Dr. DeBlanc stated that he did not know anything about phosgene.
Dr. James Robertson, a neurologist, saw plaintiff in November of 1981. He did a *1301 complete neurological examination, and his findings were that plaintiff was essentially normal except for the fact that he had extremely active reflexes and a great deal of anxiety. In his deposition, Dr. Robertson referred to the phosgene exposure and stated:
"But this is something that I have really never run into before. I am not sure if Dr. Epstein had ever run into it before. I think it's something that's not even covered in our textbooks. I have every major textbook of neurology, and phosgene isn't even listed in the index. And a review of some of the most current literature isvery little is known about it. As you know, it wasI guess for many yearsusedthought to be a part of chemical warfare, my understanding was; but my experience, and as far as I know, most neurologists would have a limited expertise in this specific area of phosgene poisoning."
Defendant's sole specification of error is that the trial court erred in finding that plaintiff proved that his alleged disability was causally related to his exposure to phosgene gas.
It is well established in the jurisprudence of this State that a plaintiff in a workmen's compensation case may recover for disability resulting from a mental condition. Gibson v. New Orleans Public Sch. Bd., 352 So.2d 732 (La.App. 4th Cir.1977); Victoriana v. Orleans Parish Sch. Bd., 346 So.2d 271 (La.App. 4th Cir.1977).
As in any other civil suit, the plaintiff in a workmen's compensation action has the burden of establishing his disability and the causal connection between said disability and the accident by a preponderance of the evidence. Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980). However, plaintiff need not establish with expert testimony the exact cause of his disability in order for him to recover. Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La.1982). Medical testimony "must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability." Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982).
A plaintiff's disability will be presumed to have resulted from an employment accident, if the plaintiff was in good health before the accident, but commencing with the accident the symptoms of the disabling condition appear and manifest themselves continuously afterwards, providing that a reasonable possibility of a causal connection between the accident and the disabling condition exists. Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980). In the instant case, plaintiff was in good health prior to his phosgene exposure, as evidenced by the fact that he had a physical examination three months prior to the accident which indicated he was in good health. In addition, the lay testimony from plaintiff's wife, Earl Laird, and Foster Qualls reveals that plaintiff was a healthy, prompt and conscientious employee prior to the accident, but that after the phosgene exposure, his health progressively deteriorated. Plaintiff's symptoms, i.e., his coughing and chest pains, etc., commenced with the accident and continued thereafter.
In order to recover workmen's compensation benefits, "(t)he mental disease or derangement must naturally result from and be causally related to injury by violence to the physical structure of the body, and not from other causes." Franklin v. Complete Auto Transit Co., 397 So.2d 60 (La.App. 2nd Cir.1981) at 62. Plaintiff suffered injury by violence to the physical structure of his body as a result of his exposure to phosgene gas.[3]
In order to recover, plaintiff must establish a causal connection between his *1302 disability and the accident. However, "(c)ausation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence." Haughton v. Fireman's Fund Am. Ins. Companies, 355 So.2d 927 (La.1978) at 928. As in Haughton, the instant record reveals no separate or intervening cause of plaintiff's disability, as no prior or subsequent accident is apparent. When an accident and resulting disability occur without any intervening cause, the accident is presumed to have caused the disability. Said presumption can be rebutted, but its effect is to shift the burden of proof to the defendant. Haughton v. Fireman's Fund Am. Ins. Companies, supra. Defendant offered no expert testimony to negate the possibility of a causal relationship between the accident and the disability. Dr. Ehrlich stated that he felt that plaintiff's symptoms were definitely associated to the accident.[4] In addition, Dr. Robertson's testimony reveals that very little is known about the effects of phosgene gas.
The trial judge noted Dr. Robertson's testimony and stated:
"between the time of the exposure to the phosgene and March of 1981 his psychological condition deteriorated to such an extent that he was unable to be the same prompt, conscientious, sturdy, steady employee as he was prior to the event in 1980."
The trial judge found that plaintiff had proven that he was totally and permanently disabled as a result of his exposure to phosgene gas. As stated in Haughton v. Fireman's Fund Am. Ins. Companies, supra, causation is a question of ultimate fact. Although compensation claims predicated upon mental disorders must be carefully scrutinized in order to protect the employer against unwarranted claims, the danger of denying recovery to a deserving claimant must be guarded against with equal enthusiasm. Royer v. Cantrelle, 267 So.2d 601 (La.App. 3rd Cir.1972), writ denied, 268 So.2d 680 (La.1972). We cannot say that the trial judge was manifestly erroneous in his determination. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
We affirm the decision of the trial court. All costs are taxed to defendant, MRO Services Company, Inc.
AFFIRMED.
NOTES
[1] Plaintiff also filed suit against BASF Wyandotte Corporation; however, said corporation was dismissed from the suit on plaintiff's own motion.
[2] While Mrs. Thum also consulted a doctor in January for flu-type symptoms, plaintiff's symptoms were different and consisted of lower back and chest pains.
[3] Although the depositions of Drs. DeBlanc and Robertson reveal that plaintiff is no longer experiencing any significant physical problems, this alone does not defeat plaintiff's claim. The critical fact is that plaintiff at one time experienced compensable physical injuries. A physical disability need not exist for a plaintiff to recover compensation benefits for a mental disability caused by an employment injury. Muse v. Sentry Insurance Company, 269 So.2d 609 (La.App. 3rd Cir.1972), writ denied, 270 So.2d 120 (La.1972).
[4] Defendant contends that the testimony of Dr. Ehrlich was insufficient to carry plaintiff's burden of proving a causal relationship between the accident and his disability, because said testimony was based on an inaccurate or incomplete history given by plaintiff to Dr. Ehrlich. Defendant cites Davenport v. McCullough Services Baroid Div., 388 So.2d 453 (La. App. 2nd Cir.1980), writ denied, 394 So.2d 616 (La.1980); Gibson v. New Orleans Public Sch. Bd., 352 So.2d 732 (La.App. 4th Cir.1977); and Jennings v. Halliburton Co., 346 So.2d 268 (La. App. 4th Cir.1977), writ denied, 349 So.2d 884 (La.1977), as support for this proposition. We find that the facts in the instant case distinguish it from the above cited cases and that the Delahoussaye v. Allen Action Agency, Inc., 300 So.2d 575 (La.App. 3rd Cir.1974), case is applicable. In Delahoussaye, the appellate court upheld the trial court's award of compensation benefits although the plaintiff had given some false statements to the doctors that testified at trial. The court stated that the plaintiff was confused but not untruthful. We find that the plaintiff in the instant case was similarly confused. Although plaintiff confused the chronology of events and got certain dates mixed up, said confusion only supports his claim for mental disorder and does not negate Dr. Ehrlich's testimony. Dr. Ehrlich stated at trial that his diagnosis of stress disorder and depression would remain the same even if certain dates were different. In addition, plaintiff is aided in his burden of proof by the presumption of a causal relationship.