BOWES, Judge.
Plaintiff appeals a judgment of the district court dismissing her suit for further workman’s compensation benefits following an accident which occurred subsequent to her work-related injury. We reverse and remand.
Ms. Linda Frix, plaintiff-appellant, was originally injured on September 17, 1981. On that date, while in the course and scope of her employment for Supreme Catering Service, Ms. Frix slipped on a loose tray and fell, sustaining an injury which was initially treated at the emergency room of East Jefferson General Hospital. She was then referred to her own physician, Dr. Bruce Razza, for further treatment.
The cross-examination, at trial, of Dr. Razza produced the following colloquy: .
Q. I have a copy of the Emergency Room Report which was supplied to the Court in response to a subpoena *711 duces tecum to the hospital and I would ask that you refer to that. Could you please read to us what it says by brief history—
Yes, sir, the brief history in the accident or emergency room visit states that the patient states she fell and hurt the hip of her right side and her right shoulder. That was the history.
MR. HELLMAN:
Q. As far as the physical findings of concern, can you make out what that says?
A. Tender at hip area and something on foot out—
Q. You can’t really make that out?
A. No, and then lumbo-sacral area tender and then ...
On Mrs. Frix’s first follow-up visit to Dr. Razza, he diagnosed her injuries as an “acute lumbosacral strain, secondary to fall, contusion of the right hip [with] [n]o signs of sciatica.” Plaintiff did not report, specifically, pain in her right foot to her physician until a follow-up visit on October 27, 1981. Thereafter, she continued to complain of pain in her right foot and, finally, on December 15, 1981, Dr. Bruce Razza (her physician) diagnosed her foot problem as Morton’s neuroma. Surgery to correct the condition took place on January 5, 1982. The surgery was deemed a success and, on February 18, 1982, Ms. Frix was discharged to return to full duty at work. During the February 18th visit, plaintiff complained of burning and numbness in her foot, which her physician attributed to her surgery.
Ms. Frix never returned to work, so we do not know if she was able to work prior to her second injury, but, two weeks later, on March 4, 1982, Ms. Frix returned to Dr. Razza complaining that she was once again experiencing acute pain, similar in nature to that which she had suffered prior to her surgery. The following testimony by Ms. Frix, on direct, is, in our opinion, the pivot on which this case hinges and, therefore, although rather long, is included:
Q. Would you recount the events prior to Mardi Gras day?
A. I seen Dr. Razza on the 18th of February and he told me that he felt that I could go back to work on the 24th if I didn’t have any trouble with my foot. I asked him about walking, going to some parades, would that be alright and he asked me about the walking I had done, how sore it would be and instructed me not to fall. I went Saturday and walked a couple of hours and my foot started hurting and started swelling on me. We waited for another couple of hours. I got up walked some more and it kept hurting me and I had my pain pills with me and I went home. Joe tried to call Dr. Razza.
Q. Joe is your husband?
A. Yes. Through his answering service, to see what to do so I didn’t know if it was normal for it to swell after I had been on it that much. We couldn’t get a hold of him so we took the kids Sunday afternoon and a couple of hours I had to sit down. I couldn’t walk on it. It was hurting so bad so we let the kids watch a couple of more parades and we went home.
Tuesday, Mardi Gras day we went down about eight o’clock all day. I had to stop every two or three hours. It was hurting, it was swelling and I took my shoe off because the shoe felt so tight. It was swollen. We sat down. I got back up after taking a pain pill after eating. I went back up with my children. It started hurting again. It was still swollen. Later on that afternoon the policeman was pushing to the back. I was standing over here on St. Charles when the people came back, a guy was in front of me, backed up on me when he went to step on my foot, when I felt that something was on my foot, I moved my foot. He did not come down hard on my foot because I jerked it out from under him. Wednesday morning when I got up my foot was swelling and Joe called Dr. Razza and he was in surgery. Joe called him Thursday. He *712 told me to do the hot soaks, elevate it and get on my crutches if I need to and come into his office.
Q. When were your workman’s compensation benefits terminated?
A. February 25th.
Q. Have you been continuing to see Dr. Razza since that time?
A. Yes.
At the close of the trial, counsel for both sides stipulated that if plaintiff called Mr. Steve Roth to testify he would testify that he was with Mr. and Mrs. Frix on Mardi Gras day and that Mrs. Frix’s foot was swollen prior to the time her foot was stepped upon. This stipulation clearly buttresses the testimony of Mrs. Frix and, when considered along with her testimony, indicates that even though she was discharged by her physician on February 18, 1982, she had not completely recovered from her injury.
Dr. Bruce Razza, Ms. Frix’s treating physician, testified as follows:
Q. So it is possible then that this injury could have been there all along, that the present condition that she has, could have been there and could have been masked by the treatment that she has received for the Morton’s neuro-ma?
A. It certainly is possible ... it certainly is possible that I could have just missed the proximal joint from the beginning and that it got better. In other words, the overall effect of the ster-iods, I treated it for one area, but the nearby area benefited too. That is possible. Again, it is not the way I see it, but I could have missed it. Yes, sir.
Q. Dr. Rauchwerk, referred to a term causalgia. Could you explain that term?
A. Causalgia has to deal with continued pain from nerve irritation. A situation applicable to this if you excise the area of the nerve that is swollen and irritated the area of the neuroma, part of the nerve ending proximal that is further on up closer to the foot could still be triggering all pain messages to the brain. If there is still irritation to it and again that could have been a component of her problem, but most of her picture started localizing in the joint in the tarsal, metatarsal joint and it sort of left that area so that area was again flared up....
Q. Now I realize when you are talking about causalgia, this causalgia is a smaller percentage. It is a low percentage of patients that have this sort of recurrence after the excision of the neuroma, but it is a possibility in this case. She did in fact, have this causal-gia?
A. Yes, sir, in other words, you know one out of twenty people or so can have this continued irritation to the nerve, even following a well done operation with everything going fine....
Q. So even if she did suffer another insult as she did on Mardi Gras day that this condition could possibly have developed any way even without that insult?
A. Well it is possible, yes, sir, ...
In Field v. Winn Dixie, Inc., 427 So.2d 616 (La.App. 5th Cir.1983), this court stated:
The plaintiff (employee) in workmen’s compensation litigation bears the burden of establishing the causal relationship between the disability and the employment accident by a reasonable preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La. 1974). Nevertheless, it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. The complaint need show only by a preponderance of the evidence that the work accident caused the disability. Allor v. Belden Corp., 393 So.2d 1233 (La.1981); Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977). "... furthermore, medical testimony ‘must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability’ *713 ....” Schouest v. J Ray McDermott & Co., 411 So.2d 1042 (La.1982).
An employee’s disability will be presumed to have resulted from an employment accident if before the accident the employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition, [emphasis ours]
Other Louisiana courts have also recog-, nized this presumption. See Thum v. MRO Services Co., Inc., 430 So.2d 1298 (La.App. 1st Cir.1983); Oalmann v. Brock and Blevins Co., Inc., 428 So.2d 892 (La.App. 1st Cir.1983) (different panel); and Martin v. Rollins Services, Inc., 424 So.2d 429 (La.App. 4th Cir.1982).
We are aware of the holding by our Supreme Court in Haughton v. Fireman’s Fund American Ins. Co., 355 So.2d 927, that “[i]f an accident causes a disability from which a workman would have recovered except for further disability produced by a separate, intervening cause, there is no liability for compensation beyond the disability produced by the job-connected accident.” Obviously, this is the case on which the learned trial judge relied (he quoted it), holding that this Mardi Gras day accident was a separate intervening cause of her present disability, a fact which Haughton, supra, holds must be proven by the employer because the above presumption, which is rebuttable, has shifted the burden back to them. In Haughton, the employer failed to maintain this burden and the court awarded compensation. We feel that the same result is present in this case.
In the case before us, the combination of (1) plaintiffs testimony; (2) the stipulated testimony of Mr. Roth; and (3) the testimony of Dr. Razza convinces us that Mrs. Frix had not completely recovered before the Mardi Gras incident and, more importantly, that there was no evidence that she would have fully recovered and been able to return to work except for the Mardi Gras day accident.
The foregoing facts, along with the rule that if an employee was symptom-free before a work-related accident but after the accident symptoms commence and continue without interruption, then the employee’s disability will be presumed to have resulted from the accident, leads us to the inescapable conclusion that the astute trial judge misconstrued the effect of Haughton here and was clearly erroneous in his conclusions that the plaintiff’s present condition is due to the Mardi Gras day incident as an intervening cause.
Finally, we find that there was a reasonable basis on which the employer and its insurer could have reached the conclusion that Ms. Frix’s original disability had ended. Considering the occurrence of the second accident, we do not find that the defendants were arbitrary or capricious in their refusal to continue to pay plaintiff benefits. Therefore, we refuse to assess penalties and attorney fees in this case. However, we do assess defendants-appel-lees for the costs of this appeal.
Accordingly, for the reasons stated above, we reverse the judgment of the trial court and remand for a determination by the trial court of plaintiff’s extent of disability, amount of compensation due, and further proceedings consistent with the holding herein.
REVERSED AND REMANDED.