GUIDRY, Judge.
Plaintiff-appellee, Joseph Gobert, was employed as a laborer by J.A. Jones Construction Company, Inc. (hereafter Jones) near Lake Charles, Calcasieu Parish, Louisiana, on June 2, 1982, when a phosgene gas leak occurred at a plant adjoining the Jones work site. Mr. Gobert and about fifty other workers were caught unaware and exposed to the phosgene.
Aetna Casualty and Surety Company (hereafter Aetna) was the worker’s compensation insurer of Jones and, on its behalf, paid compensation benefits to plaintiff until April 24, 1984. Thereafter, appellee filed suit against Aetna and Jones seeking additional benefits, penalties and attorney’s fees. The matter was tried on August 6, 1985, and judgment was rendered in favor of plaintiff.
From that judgment, defendants timely perfected this suspensive appeal. Plaintiff answered the appeal seeking an increase in the attorney’s fees awarded. We affirm.
Defendants-appellants allege that the trial court erred in finding the following: (1) plaintiff was disabled as a result of an injury following his exposure to phosgene gas and at the time of trial was permanently disabled as a result of such exposure; and, (2) defendants were arbitrary and capricious in terminating worker’s compensation benefits to plaintiff.
In connection with specification of error number one above, the appellants urge the following:
1. The manifest error standard of review is not applicable to deposition testimony, which deposition testimony includes the testimony of the plaintiff and all physicians.
2. Plaintiff sustained no injury or physical disability from his phosgene exposure.
3. The onset of cancer in plaintiff’s body was not caused by his phosgene exposure.
4. Cancer overwhelmed plaintiff’s prior minimal ventilatory impairment such that plaintiff’s disability at the time of trial was solely due to cancer.
Appellants’ first contention is correct. In Wattigny v. Breaux, 488 So.2d 419, 424 (La.App. 3rd Cir.1986), a panel of this court stated:
“In addition to proving the extent of his injuries, a plaintiff has the burden of proving by a preponderance of the evidence the causal connection between the accident and the injuries claimed. White v. Cumis Ins. Soc., 415 So.2d 574 (La.App. 3rd Cir.1982), writ den., 420 So.2d 164 (La.1982). It is well established that positive findings of medical experts are to be afforded greater weight than negative findings as to the existence or not of a particular condition. Alexander v. Leger, 423 So.2d 731 (La.App. 3rd Cir.1982), writ den., 430 So.2d 75 (La. *546 1983)_ However, when the trial court's factual conclusion is based on deposition evidence, the ‘clearly wrong’ (or manifest error) standard of review is not applicable because the trial court is in no better position to evaluate credibility or resolve conflicts in deposition testimony than the reviewing court. Langford v. Calcasieu Parish Police Jury, 396 So.2d 956 (La.App. 3rd Cir.1981); Wise v. La. Dept. of Transp. & Development, 470 So.2d 954 (La.App. 3rd Cir.1985), writ den., 475 So.2d 1108 (La.1985). Therefore, when evaluating depositions rather than live testimony, a fundamental function of the reviewing court is to determine the sufficiency and preponderance of the evidence. Vial v. Armstrong, 479 So.2d 583 (La.App. 1st Cir. 1985), writ den., 481 So.2d 634 (La.1986).”
Plaintiff concedes the applicability of this principle of appellate review but urges that the deposition testimony and that presented live, when considered in pari materia, fully supports the trial court’s finding of permanent disability by reason of work related injury.
This, then, brings us to appellants’ second contention, i.e., that the trial court erred in finding plaintiff’s disability related to phosgene gas exposure.
Our brethren of the First Circuit were called upon to decide the same issues following a phosgene gas exposure in the case of Thum v. MRO Services Co., Inc., 430 So.2d 1298 (La.App. 1st Cir.1983), writ denied, 434 So.2d 1092 (La.1983). The court stated at 1301:
“As in any other civil suit, the plaintiff in a workmen’s compensation action has the burden of establishing his disability and the causal connection between said disability and the accident by a preponderance of the evidence. Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980). However, plaintiff need not establish with expert testimony the exact cause of his disability in order for him to recover. Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La.1982). Medical testimony ‘must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability.’ Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982).
A plaintiff’s disability will be presumed to have resulted from an employment accident, if the plaintiff was in good health before the accident, but commencing with the accident the symptoms of the disabling condition appear and manifest themselves continuously after-wards, providing that a reasonable possibility of a causal connection between the accident and the disabling condition exists. Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980). In the instant case, plaintiff was in good health prior to his phosgene exposure, as evidenced by the fact that he had a physical examination three months prior to the accident which indicated he was in good health. In addition, the lay testimony from plaintiff’s wife, Earl Laird, and Foster Qualls reveals that plaintiff was a healthy, prompt and conscientious employee prior to the accident, but that after the phos-gene exposure, his health progressively deteriorated. Plaintiff’s symptoms, i.e., his coughing and chest pains, etc., commenced with the accident and continued thereafter.”
The lay testimony in this case closely parallels that in Thum, supra. The plaintiff stated, in his deposition, that he was asymtomatic before his exposure to the phosgene, but that his symptoms, coughing, weakness and shortness of breath and weight loss, appeared concurrently with or shortly after exposure and continued thereafter without interruption. This testimony was corroborated by the live testimony of his wife, his son, Calvin Citizen, Mr. Gobert's foreman at the time of the accident and for the preceding five months, and by that of Aloysious Frey, a landowner-farmer for whom and with whom plaintiff had worked for over 40 years.
Defendants make much of the fact that Mr. Gobert did not seek medical treatment *547 on the day he was exposed to the gas and that his hospital visit the following day was at the insistence of his employer. We do not find this significant. At the time of the accident, Joseph Gobert was 69 years old, had worked hard all of his life and, according to testimony, was in dire need of the job he was performing. Mr. Gobert had only a second grade education, could neither read nor write and spoke English as a second language, his primary language being French. Mr. Gobert was neither sophisticated nor educated enough to realize the possible consequences of the phosgene exposure. This finding is supported by the fact that he did not immediately seek medical attention but continued to work until his symptoms became so severe that he was forced to cease work six weeks later.
The treating physician in this case was Dr. Joseph Y. Bordelon, a specialist in internal and pulmonary medicine. Mr. Go-bert was referred to Dr. Bordelon by his family physician and first visited the doctor July 14, 1982. At that time, Dr. Bordelon found wheezing upon full expiration and performed pulmonary function studies which revealed a reduced flow rate of expired air. Based upon the patient’s history, he was a non-smoker with no prior history of lung problems, Dr. Bordelon diagnosed plaintiff as having small airways disease, secondary to phosgene gas exposure. Dr. Bordelon concluded that, as a result of this condition, Gobert was disabled and unable to engage in manual labor. We find, as did the trial court, that plaintiff was totally disabled as of July 14, 1982. Dr. Bordelon continued to follow the patient on a regular basis from that time up until his last office visit on March 13,1985. During his deposition which was taken June 14, 1985, Dr. Bordelon was asked:
“Q. Was Mr. Gobert, in your opinion, disabled as a result of your last visit on March 13, 1985?
A. Oh, I think he was definitely disabled at that point in time.
Q. Is the disability on March 13, 1985, related not just to the small airways disease or lung problems, which you were treating him for through early ’84, but also the cancer which ...
A. Yeah, I think ...
Q. ... developed?
A. ... you know, at this point in time, the cancer was completely overwhelming everything else that he has and it was a primary — and he, I suspect, would have difficulty in doing anything of any significance at this point.”
Dr. Bordelon was of the opinion that plaintiff’s condition .had not changed as of the date of his deposition.
Mr. Gobert was referred by the defendants to two doctors of their own choosing for examination and evaluation, Dr. William L. Coulter, Jr., a practicing specialist in pulmonary medicine, and Dr. Robert N. Jones, a professor at Tulane University Medical Center and also a pulmonary specialist. Dr. Jones was first employed by Olin Corporation, the owner of the plant from which the phosgene escaped, to examine all the victims of the gas exposure and then later by Aetna.
Dr. Coulter testified as follows:
“Q. With regard to Mr. Gobert, could you tell the Court, as a result of examining Mr. Gobert, you rendered a written opinion to Aetna Casualty & Surety Company dated September 16, 1982?
A. Yes, I felt he had pulmonary emphysema.
Q. And was that based on tests that you performed here in your office or as an out patient at one of the local hospitals?
A. In my office.
Q. Okay, Doctor, did you feel that the pulmonary emphysema was related to the phosgene inhalation of June 2, 1982, that Mr. Gobert recited in his history?
A. It was possible.
Q. As I understand emphysema and, of course, I’m a layman, it is not a disease that could be caused by the inhalation of phosgene; is that a correct statement?
A. Yes, it can be.
Q. It can be caused by it, okay. In addition, if it was developed for another reason, would it be a disease that would be aggravated by the inhalation of phos-gene?
*548 A. Yes.”
Dr. Coulter explained that the prognosis for Mr. Gobert was poor, in that, pulmonary emphysema is incurable and becomes progressively worse. Although Dr. Coulter opined that, as of the date of his examination in September of 1982, Gobert was physically capable of performing manual labor, he conceded that with the passage of time he would get shorter and shorter of breath on exertion and finally unable to perform manual labor.
Clearly, Dr. Coulter’s testimony is no help to the defendants, even if one assumes that Mr. Gobert had emphysema prior to his exposure. As stated in Guillory v. U.S. Fidelity & Guaranty Insurance Company, 420 So.2d 119 (La.1982), at 123:
“1) Clearly a worker’s pre-existing condition does not bar his recovery under the Louisiana Workers’ Compensation statute. Guidry v. Serigny, 378 So.2d 938 (La.1979); Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975). An employer takes the worker as he finds him. An abnormally susceptible worker is entitled to no less protection under the compensation statute than a healthy worker. Allor v. Belden Corp., 393 So.2d 1233 (La.1981) and cases cited therein at 1236. Furthermore it is immaterial that the diseased or weakened condition eventually might have produced death or disability outside the employment situation. See generally: Malone & Johnson, Workers’ Compensation § 232, 13 La.Civ.Law Treatise 482.”
The only medical evidence to the contrary came from Dr. Robert N. Jones. Dr. Jones first saw Mr. Gobert on October 4, 1983, almost a year and one-half after his exposure to phosgene gas. According to Ms. Irma McCoy, senior claims representative for Aetna, it was on the strength of Dr. Jones’ letter and report dated October 12, 1983, following this one examination, that Aetna elected to terminate compensation payments to Mr. Gobert. Although the examination was conducted in October 1983, at Olin’s request, it was not until March 1984 that a copy of the report and supporting letter reached Aetna. The October 1983 letter contained the following opinion:
“These records contain no documentation of signs of lower respiratory injury at or shortly after the time of phosgene exposure. According to Mr. Gobert’s own statements, he did not go to the hospital on the day of exposure, and went on the next day only because he was told to go. This history is inconsistent with significant lower respiratory tract or lung injury. Without evidence of such injury, it is illogical to impute this man’s symptoms, or his very mild functional impairment, to the single irritant gas exposure.”
We do not consider a full discussion of Dr. Jones’ voluminous testimony to be necessary. Suffice it to say that we agree with the learned trial judge, who, in his reasons for judgment, stated:
“Dr. Jones would not even give credence to the fact that the phosgene irritated Plaintiff’s lips; and, related Plaintiff’s respiratory problems to hay fever [of which there was no prior history] rather than to his admitted exposure to phos-gene. If we permitted Dr. Jones’ opinion to prevail, the other specialists would have to be characterized as incompetents.”
It is evidence that the trial judge gave greater weight to the opinion of Dr. Borde-lon, the treating physician, than to the opinion of Dr. Jones, the examining physician.
[[Image here]]
This choice is particularly appropriate in light of our suggestions to trial courts to give greater weight to the testimony of treating physicians rather than to physicians who examine plaintiffs for diagnosis only. Delco v. Heritage Manor Nursing Home, 441 So.2d 309, (La.App.3d Cir.1983), writ denied, 443 So.2d 1123 (La.1984). We add that the ultimate determination as to whether a disability claimant has proved the causation of his disability is made by the courts and not by the medical experts. Martin v. H.B. Zachry Company, 424 So.2d 1002 (La.1982)....”
Jolibois v. Hartford Accident & Indemnity Company, 486 So.2d 283, 287 (La.App. *549 3rd Cir.1986), writ denied, 489 So.2d 916 (La.1986).
We find no error in the trial judge’s acceptance of Dr. Bordelon’s opinion over that of Dr. Jones.
Next, we turn our attention to the “cancer argument” raised by appellants. Mr. Gobert was not diagnosed as having cancer until February 1984, almost two years after the phosgene incident and four months after his first examination by Dr. Jones. The trial judge, in his reasons for judgment, stated:
“It is apparent, then, six weeks after injury, the Plaintiff was disabled. At a minimum HE WAS AN ‘odd lot’ because no one, because of workman’s compensation exposure, would hire a black, 69 year old man, who could neither read nor write, who was an unskilled common labor [sic], who had been exposed to phosgene, and who would become short of breath on exertion. There is no medical testimony that this would improve, as the injury he had was permanent.
Let us then lay the first ghost. The employer takes the laborer as he finds him just' as the tort-feasor takes his victim as he finds him. While the Defendant ‘presumes’ pre-existing cancer, he fails to prove same, and, even if he could prove same, it was not disabling at accident With or without cancer, the preceding paragraph proves up disability. (Of course Plaintiff had had prostate cancer in the early 1970’s, but this was not a factor).
We now have Plaintiff disabled at accident on a permanent basis.
Let us now turn to the advent of cancer, remembering that cancer reared it’s [sic] ugly head about 18 months after accident in a man who was already permanently, totally disabled. It may be that cancer killed him, — this will be decided later. However, cancer couldn’t add to his disability, because before cancer, as stated above, he was already totally permanently disabled.
Certainly, then, until his death on September 23, 1985, he was totally disabled and entitled to compensation.”
In Woodard v. Gregory and Cook, Inc., 442 So.2d 912, 914 (La.App. 3rd Cir.1983), this court stated:
“... The odd-lot doctrine entitles an employee to compensation for total disability when, as a result of a compensa-ble injury, he is rendered unable to perform any services for which a reasonably dependable market exists. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La. 1981). An odd-lot claimant need not be absolutely helpless to qualify for total disability status. If the claimant can prove that his physical condition, his mental capacity; his education, training, age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd-lot category. The employer or insurer must then show that some form of suitable work is regularly and continuously available to the claimant in the area where he resides. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980).”
Although, at the time of trial, Mr. Go-bert’s disability from cancer may have increased to a point where it was greater than his disability due to the phosgene exposure, nonetheless, appellants never demonstrated that plaintiff’s original disability had ever improved to such an extent as to allow him to equally and fairly compete in the job market available to a person of his age, education and training in the area where he resided. We, therefore, find that the trial judge was correct in rejecting defendants’ argument that plaintiff’s disability was solely related to the onset of cancer in his body.
Finally, we address the question: “Were the defendants arbitrary and capricious in terminating worker’s compensation benefits to plaintiff?”
“Whether or not a termination of benefits is arbitrary, capricious or without probable cause depends primarily on the facts known to the employer at the time of its action. DeJean v. B.F. Trappey’s Sons, Inc., 285 So.2d 297 (La.App. 3rd Cir.1973). The determination by the trial *550 court of whether the employer’s conduct is arbitrary, capricious or without probable cause is at least in part a factual determination. Kilbourne v. Armstrong, 351 So.2d 802 (La.App. 1st Cir. 1977). Therefore, we should not disturb the trial court’s finding unless it is manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).”
Woodard v. Gregory and Cook, Inc., supra, at 915.
As stated earlier, Aetna based its decision to terminate Mr. Gobert’s compensation benefits on Dr. Jones’ report of October 1983. Although Dr. Jones reported finding no significant lower respiratory tract or lung injury, he did acknowledge the presence of a mild functional impairment, which he considered unrelated to Mr. Gobert’s admitted exposure to phosgene gas. This report was clearly inconsistent with the previous reports of Dr. Bordelon, plaintiff’s treating physician, and the report of Dr. Coulter, who had examined plaintiff at defendants’ request. In our view, in light of these conflicting opinions, defendants had a duty to make a further investigation in an effort to ascertain Mr. Gobert’s exact medical condition before terminating payment of compensation. Under the particular circumstances of this case, we conclude, as did the trial judge, that the insurer’s action was arbitrary and capricious.
We have considered plaintiff's request for an increase in attorney’s fees awarded for work at the appellate level. In our opinion, the $7,500.00 awarded by the trial judge is adequate compensation for both the trial and appellate work.
Accordingly, for the reasons stated, the judgment appealed from is affirmed. All costs of this appeal are assessed against appellants.
AFFIRMED.
DOMENGEAUX, J., concurs in part and dissents in part and assigns written reasons.