STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

SIDNEY ANDRUS

VERSUS

CROWLEY LAUNDRY & DRY CLEANERS


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT # 4
PARISH OF ACADIA, NO. 00-9545
HONORABLE JOHN C. GROUT, JR.,
WORKERS' COMPENSATION JUDGE

**********

NED E. DOUCET,  JR.
CHIEF JUDGE

**********

Court composed of Ned E. Doucet, Jr.,Chief Judge, Oswald A. Decuir, and Marc T.
Amy, Judges.

**REVERSED AND RENDERED.**


**Michael B. Miller**
**Miller & Miller**
**P. O. Box 1630**
**Crowley, LA  70527-1630**
**Counsel for Plaintiff/Appellant:**
     **Sidney Andrus**

**John W. Penny  Jr.**
**Penny & Hardy**
**P. O. Box 2187**
**Lafayette, LA 70502**
**Counsel for Defendant/Appellee:**
     **Crowley Laundry & Dry Cleaning, Inc**.

DOUCET, Chief Judge,

Claimant, Sidney Andrus, appeals a judgment of an Office of Workers' Compensation (OWC) judge denying his claim for benefits during the disputed period of time (between November 29, 2000 and August 14, 2001), but granting Claimant the right to be treated by an orthopaedist of his own choosing, at Defendant's, Crowley Laundry and Dry Cleaners, Inc.'s, expense. We reverse the judgment of the OWC and render judgment in favor of Claimant as set out below.

**DISCUSSION OF THE RECORD**

Both parties agree that Claimant had the distal portion of his right ring finger amputated in a work-related accident on May 4, 2000. Claimant was working at Crowley Laundry & Dry Cleaners at the time of the accident. Claimant also worked a second job as a porter at the Rice Palace in Crowley. The injury to his finger was treated at the emergency room of American Legion Hospital by Dr. Michael Holland. Subsequently, on July 7, 2000, Dr. Holland performed an amputation-revision of Claimant's finger tip. Claimant continued to see Dr. Holland through November 29, 2000, complaining of "finger pain and a cold hand." Noting that Claimant's revision "wound healed beautifully," Dr. Holland discharged Claimant from his care at that time. According to Dr. Holland's records from Claimant's November 29th visit, Claimant had reached maximum medical improvement on August 17, 2000, and was released to go back to work at that time. The records also indicate that Claimant was "working full-time at the Rice Palace and doing fine." Based upon the report of November 29, 2000, Defendant terminated Claimant's compensation benefits effective that date.

An affidavit from Jo Ann S. Broussard, the manager of the Rice Palace, established that Mr. Andrus had worked 517.09 hours between August 13 and October 30, 2000, when he was terminated for non-performance.

Following discharge by Dr. Holland, Claimant filed a claim with the OWC for continued weekly benefits. He also filed a Motion and Order to Provide Medical Treatment, in which he sought treatment from another orthopaedist of his choosing. Claimant's case was assigned to OWC Judge Constance Abraham-Handy, who ordered an independent medical examination (IME) by Dr. Gary L. Porubsky, and reserved Claimant's right to reargue that portion of his motion seeking treatment from another orthopaedist of his choice.

The IME was performed on February 12, 2001. Dr. Porubsky's report of the IME is equivocal as to Claimant's ability to work stating (emphasis ours):

> He should work on desensitization of the tip of the digit. He may benefit from utilizing a transdermal gel to deliver a nonsteroidal anti-inflammatory agent topically. I would place him on a nonsteroidal anti-inflammatory agent at this time. I would instruct the patient to return to gainful employment and wear a loose fitting glove to protect the tip of the digit. *Hopefully* by utilizing the transdermal gel and a nonsteroidal anti-inflammatory agent he would tolerate wearing gloves and returning to gainful employment.

Following Dr. Porubsky's examination, on May 21, 2001, Claimant refiled his motion seeking treatment from another orthopaedist of his choice. That motion was heard before OWC Judge Abraham-Handy on July 19, 2001. She denied Claimant's motion on July 26, 2001, finding that Dr. Holland was Claimant's "de facto" orthopaedic choice and limiting Claimant to orthopaedic treatment from either Dr. Holland or Dr. Porubsky (a writ on that ruling was taken to this court and denied).

Dr. Porubsky re-evaluated Claimant on August 14, 2001. His report of that examination reads, in part as follows:

2

I plan to place him in a formal rehabilitative program in Crowley to work on active and passive range of motion of the MP and interphalangeal joints of the ring digit as well as desensitization and strengthening exercises. He was given a prescription to obtain a gel for the transmission of a non-steroidal anti-inflammatory agent topically.

He was tentatively instructed to be seen in follow-up by myself in approximately two weeks' time.

As discussed with him, other recommendations would include a third operative procedure to transect the radial and ulnar digital nerve further proximally, although as discussed with him, there is still the possibility that he could have persistent discomfort in the ring digit even if this procedure was performed.

Following receipt of Dr. Porubsky's report of Claimant's August 14, 2001 examination, Defendant reinstated Claimant's benefits effective that date. Claimant then filed a motion seeking to have the benefits retroactively reinstated to November 2000, when they were originally terminated. A hearing on that motion was held before OWC Judge Abraham-Handy on January 11, 2002, and taken under advisement. Judge Abraham-Handy dictated her decision into the record on June 28, 2002, finding Claimant was entitled to have his benefits retroactively reinstated to November 29, 2000. However, that decision was never reduced to a formal written judgment and there is no indication in the record that either counsel was informed of her decision. Judge Abraham-Handy died August 6, 2002.

Following her death, OWC Judge John Grout was appointed "to preside over all matters pending prior to Judge Handy's death." After reviewing the evidence and testimony, Judge Grout ruled that Claimant was not disabled between November 29, 2000 and August 14, 2000, and thus, was not entitled to weekly indemnity benefits during that period of time. He further ruled that Claimant had not "been treated by an orthopaedist of his own choosing," and thus, was entitled "to be treated by an orthopaedist of his choice at the employer's expense."

Claimant, Sidney Andrus, appealed, arguing that the judgment by Judge Grout should be set aside and the unsigned judgment of Judge Abraham-Handy be made the judgment of the OWC.

**DISCUSSION OF THE LAW**

We find no specific provision in the Office of Workers' Compensation Hearing Rules which covers a situation as in the case sub judice. Provisions for decisions after the death, resignation, removal from office or the expiration of a term in office are covered in La.R.S. 13:4209 (emphasis ours) which states:

> A. In all cases heard and taken under advisement of the district judge or judges of the city courts, if the judge before whom a case is tried dies, resigns, or is removed from office, or if his term expires before rendering his judgment in the case, his successor in office shall decide the case from the evidence in the record, if all of the testimony is in writing. If it is a case in which the testimony has not been reduced to writing, the succeeding judge shall decide the case from a statement of the facts, if one is found in the record, or if the parties to the suit agree upon a statement of facts. If the testimony is not in the record, and there is no statement of facts, the case shall be tried de novo.

> B. (1) *In cases which are heard and in which judgment is rendered, but not signed*, whether the case was taken under advisement or not, if the judge who rendered the judgment dies, resigns, or is removed from office, or if his term expires before signing judgment in the case, *his successor in office shall have the authority to sign a judgment which conforms with the judgment rendered.*

> (2) *If a prior judge has stated an affirmative intent to sign a judgment and failed to do so for whatever reason, the successor judge is empowered to sign the judgment.*

The applicability of this statute to OWC proceedings was discussed by our brethren of the first circuit in *Bass v. National Maintenance Corp.*, 95-0367, pp. 4-6 (La.App. 1 Cir. 12/15/95), 665 So.2d 782, 784-85 (footnote omitted):

LSA-R.S. 23:1310.5(A) provides:

> (1) Insofar as may be possible, all the evidence pertaining to each case, except as to noncontested matters, shall be heard by the hearing officer initially assigned to the

4

case. Upon the completion of such hearing or hearings, *the* hearing officer shall make such order, decision, or award as is proper, just, and equitable in the matter.

(2) Either party feeling aggrieved by such order, decision, or award shall, after receipt by certified mail of the order, decision, or award, have the right to take an appeal to the circuit court of appeal for the judicial district elected by the claimant upon the filing of the petition. A copy of the petition for appeal shall be filed with the director who, upon receipt will prepare the record for the appellate court. (Emphasis added.)

In light of this statutory provision, there is an implication that the case cannot be decided by any hearing officer other than "the" one who heard the case and only that hearing officer is authorized to enter such order, decision, or award as is proper, just, and equitable in the matter. *See Darensbourg v. The Great Atlantic and Pacific Tea Company, Inc.*, 94-0761, p. 3 (La.App. 1st Cir. 11/9/95), 665 So.2d 35, 37; *Ledoux v. Southern Farm Bureau Casualty Insurance Company*, 337 So.2d 906, 908 (La.App. 3rd Cir.1976). As previously observed, the present case was heard and decided by Rayford. Subsequently, Moses-Laramore signed the judgment. Since the judgment was not signed by the hearing officer who heard and decided the case, we must consider whether the law authorizes a successor hearing officer to sign the judgment in this matter.

LSA-R.S. 13:4209(B) authorizes a successor judge to sign a judgment which conforms with the judgment rendered when the judge who tried the case and rendered a decision dies, resigns or is removed from office, or if his term expires before a judgment is signed in the case. The applicability of this statute is specifically limited to successor judges of the district courts and city courts of this state and by its terms is inapplicable to OWC hearing officers who are not members of the judiciary. LSA-R.S. 13:4209(A); *see* LSA-R.S. 23:1021(12) and 1310.1.

Since January 1, 1990, the administrative hearing officers are vested with original, exclusive jurisdiction over claims or disputes arising out of the workers' compensation [95 0367 La.App. 1 Cir. 5] law. LSA-R.S. 23:1310.3(E); *see* LSA-Const. art. V, § 16(A). The hearing officer's role in the administration of those claims or disputes is defined in the Workers' Compensation Act. The hearing officer is not bound by the technical rules of evidence or procedure other than as provided for in the workers' compensation law. LSA-R.S. 23:1317(A). In addition to those procedures set forth by statute, the director of the OWC has authority to adopt and promulgate reasonable rules and regulations, including the rules of procedure before the hearing officers, according to the procedures established by the Administrative Procedure Act.

5

LSA-R.S. 23:1291(B)(13) and 1310.1(C). All rules and regulations, properly approved and promulgated under the Administrative Procedure Act, shall be consistent with the workers' compensation law and shall be binding in the administration of that law. LSA-R.S. 23:1310.1(C).

Chapter 10 of Title 23 of the Louisiana Revised Statutes does not contain a provision similar to LSA-R.S. 13:4209, nor does it directly make the provisions of LSA-R.S. 13:4209 applicable to the hearing officer system in the OWC. In the absence of any such provision, a successor hearing officer is without authority to render a decision and/or sign an order, decision, or award if he or she was not the one who heard the matter. *See* LSA-R.S. 23:1310.5(A). However, pursuant to the authorization provided in LSA-R.S. 23:1291(B)(13) and 1310.1(C), the director of the OWC has promulgated hearing officer rules which govern the practice and procedure in workers' compensation proceedings. *See* LAC 40:I.2101-2173[now LAC 40.I5501-6627] ("Hearing Officer Rules"). Pertinent to the determination of the validity of the judgment signed by the successor hearing officer is Hearing Officer Rule 2105[now §6601[1]] which provides:

> Any matter of practice or procedure not delineated herein and not in conflict with either the Workers' Compensation Act or these rules will be guided by practice and procedure followed in the district courts of this state as well as the practice and procedures provided for in the Louisiana Code of Civil Procedure.

The annotation following this rule indicates that it was promulgated in accordance with LSA-R.S. 23:1310.1.

Since the authority of a successor hearing officer has not been delineated by the workers' compensation law or Hearing Officer Rules, this issue will be governed by the practice and procedure applicable to the district courts of this state which is found in LSA-R.S. 13:4209. Furthermore, this court notes that Hearing Officer Rule 2159 [we find no comparable section in the new rules adopted in 1999] implicitly assumes the applicability of the principles of LSA-R.S. 13:4209 to the workers' compensation proceeding in that it specifically provides for the submission of a case when a successor hearing officer is involved.

We, as did our brethren of the first circuit, find La.R.S. 13:4209 applicable to

the situation before us.

---

[1]LAC 40:I.6601- "Unless otherwise provided for in these rules, any practice or procedure not in conflict with either the Workers' Compensation Act or these rules will be governed by practice and procedure provided for in the Louisiana Code of Civil Procedure."

6

Insomuch as we have found La.R.S. 13:4209 applicable to the case sub judice, we now look to that statute for resolution of the issue raised by appellant.

Louisiana Revised Statute 13:4209 was amended by Acts 1993, No. 1009, § 1. The prior statute, with minor modifications, was designated subsection "A" in the amended version and subsection "B" was added. Under the prior statute a judge's successor in office decided any case in which a final judgment had not been rendered and signed. However, the amended statute, which is now in effect, added subsection "B" which provides (emphasis added):

> B. (1) *In cases which are heard and in which judgment is rendered, but not signed, whether the case was taken under advisement or not, if the judge who rendered the judgment dies,* resigns, or is removed from office, or if his term expires before signing judgment in the case, *his successor in office shall have the authority to sign a judgment which conforms with the judgment rendered.*
>
> (2) *If a prior judge has stated an affirmative intent to sign a judgment and failed to do so for whatever reason, the successor judge is empowered to sign the judgment.*

According to the general rules of statutory construction as reviewed for us by our supreme court in *Palmer v. Louisiana State Board of Elementary and Secondary Education*, 02-2043, pp. 4-6 (La. 4/9/03), 842 So.2d 363, 367-68:

> Principles of judicial interpretation of statutes are designed to ascertain and enforce the intent of the legislature in enacting the statute. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La.6/29/01), 808 So.2d 294 [c]iting *Stogner v. Stogner*, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766; *State v. Piazza*, 596 So.2d 817, 819 (La.1992). The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the legislature to enact the law. *Succession of Boyter*, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4. However, when a law is susceptible of different meanings, "it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10.

7

The meaning and intent of a law is determined by considering the law in its entirety and all other laws concerning the same subject matter and construing the provision in a manner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it. *Bond, supra* at 302; *Boyter, supra* at 1129; *Stogner, supra* at 766. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. *Boyter*, 756 at 1129. Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided. *Langlois v. East Baton Rouge Parish Sch. Bd.*, 99-2007 (La.5/16/00), 761 So.2d 504, 507; *Boyter*, 756 at 1129. Furthermore, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." *First Nat'l Bank of Boston v. Beckwith Mach. Co.*, 94-2065, p. 8 (La.2/20/95), 650 So.2d 1148, 1153 (quoting *Smith v. Flournoy*, 238 La. 432, 115 So.2d 809, 814 1959)).

The starting point for the interpretation of any statute is the language of the statute itself. *Cat's Meow, Inc. v. City of New Orleans*, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198; *Touchard v. Williams*, 617 So.2d 885 (La.1993).

According to Black's Law Dictionary, Fifth Edition, a "[j]udgment is 'rendered' when [a] decision is officially announced, either orally in open court or by memorandum filed with [the] clerk." In the instant case Judge Abraham-Handy rendered her decision orally into the record on June 28, 2002. Considering the fact that Judge Abraham-Handy rendered a decision before she died, the wording of subsection "B" of La.R.S. 13:4209, and the rule of statutory construction which mandates that we give effect to all parts of a statute and refrain from any interpretation that would make any part of the statute superfluous or meaningless, we find that Judge Grout should have signed a judgment which conformed with the judgment rendered by Judge Abraham-Handy.

Accordingly, for the reasons stated above, we reverse the judgment read, rendered and signed by OWC Judge John Grout, Jr. on February 7, 2003, and render

judgment awarding Claimant, Sidney Andrus, weekly compensation benefits for the period from November 29, 2000, through August 14, 2001, when his benefits were voluntarily reinstated. All costs of this appeal are assessed against Defendant-Appellee, Crowley Laundry & Dry Cleaning, Inc.

**REVERSED AND RENDERED.**