# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-0910

**SHERALON MOORE**

**VERSUS**

**PITT GRILL**

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 01-1637
CONSTANCE ABRAHAM-HANDY AND SHERAL KELLAR, CHIEF JUDGE,
WORKERS' COMPENSATION JUDGES

**********

### JOHN D. SAUNDERS
### JUDGE

**********

Court composed of Ulysses G. Thibodeaux, Chief Judge, John D. Saunders, Marc T. Amy, and Billy H. Ezell, Arthur J. Planchard,* Judges.

**Thibodeaux, C.J., concurs in the result.**

**Amy, J., concurs in part and dissents in part and assigns written reasons.**

**REVERSED AND RENDERED.**

**Robert T. Jacques, Jr.**
**Attorney at Law**
**1011 Lakeshore Dr., Suite 310**
**P.O. Box 1883**
**Lake Charles, LA 70601**
**(337) 433-4674**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Sheralon Moore**

---

* Judge Arthur J. Planchard, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge *Pro Tempore*.

**Dennis Stevens**
**Gibbens & Stevens**
**222 W. St. Peter Street**
**New Iberia, LA 70560**
**(337) 365-7034**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Pitt Grill**

**SAUNDERS, J.**

The appellant, Sheralon Moore, appeals the ruling of the workers' compensation judge ("WCJ"), finding that she failed to sustain the requisite burden of proving causation between a work related accident and her disability. We reverse and render.

## FACTS

Sheralon Moore was employed as a General Manager at Pitt Grill in Lake Charles, Louisiana. On the night/early morning of May 1-2, 2000, an armed robbery occurred at the Pitt Grill. Ms. Moore was sprayed in the face with mace as the robber was leaving the store.

On the morning of May 2, 2000, Ms. Moore was treated at the Lake Charles Memorial Hospital emergency room for the effects of the mace spray to her face. She was given an injection to calm her, her eyes were washed, and a treatment was applied to her lips and face to alleviate the burning effects of the chemical spray. Ms. Moore returned to work the following day.

Two to three days following the robbery, Ms. Moore began to experience neck pain. On May 22, 2000, Ms. Moore was seen by Dr. Homer Williams at Bayou Comprehensive. Dr. Williams recommended physical therapy, which Ms. Moore continued for the duration of her remaining employment at Pitt Grill. On November 3, 2000, Ms. Moore sought treatment from Dr. Clark Gunderson, an orthopaedic physician, yet she continued to work for Pitt Grill without interruption. She indicates that her neck pain continued to worsen, and on February 2, 2001, following her shift, she went to the emergency room complaining of neck pain. She has not returned to work since February 2, 2001. Ms. Moore claims that she continues to have pain in her neck, shoulder, and down her right arm. Dr. Gunderson, recommends an anterior

cervical fusion at C5-6. Ms. Moore's employer refuses to authorize this procedure.

This matter was heard by Constance C. Handy, Workers' Compensation Judge ("WCJ"), on November 5, 2001. Judge Handy took the matter under advisement at the conclusion of the hearing on November 5, 2001, and allowed the parties to file briefs on the issues of penalties and attorney's fees by November 13, 2001. On January 11, 2002, Judge Handy rendered a Post-Trial Order. This order stated: "After reviewing the record, considering the law and evidence, the court feels it would be beneficial to have Ms. Moore seen by an orthopedist of the judge's choice and a licenced psychologist or a licenced psychiatrist of the judge's choice pursuant to LSA-R.S. 23:1124.1." Dr. Lynn Foret, the court-ordered orthopedist, recommended a cervical decompression at C5-6, and Dr. Paula Simien, the court-ordered psychiatrist, recommended various psychotherapy and psychiatric treatments for Ms. Moore.

Due to Judge Handy's death, the decision in this matter was rendered by Sheral Kellar, Workers' Compensation Judge. On April 7, 2003, following a review of the trial record, Judge Kellar issued oral reasons for judgment on the matter. Judge Kellar ruled that Sheralon Moore failed to sustain the requisite burden of proving causation between the accident and her disability.

Ms. Moore presents the following assignments of error:

1) The workers' compensation judge was clearly wrong in failing to consider Plaintiff's Exhibit Number 1, the Lake Charles Police Incident Report, and Plaintiff's Exhibit Number 2, in globo notice and demand letters.

2) The workers' compensation judge committed manifest error in failing to consider the reports of Dr. Lynn Foret, Orthopaedic Physician and Dr. Paula Mouton Simien, Psychologist as both were appointed by the presiding trial judge after the conclusion of trial while the case was under advisement.

3) The workers' compensation judge's finding that the claimant failed to sustain the requisite burden of proving causation between the accident

2

and the disability is manifestly erroneous.

4)    The workers' compensation judge was clearly wrong and manifestly erroneous in failing to address psychological/psychiatric factors, including treatment.

5)    The workers' compensation judge was clearly wrong in failing to award penalties and attorney fees.

## DISCUSSION

The appellate court's standard of review in workers' compensation matters is well established[1] and clearly set out in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La.7/1/97), 696 So.2d 551, 556:

> Factual findings in workers' compensation cases are subject to the manifest error clearly wrong standard of review. *Smith v. Louisiana Dep't of Corrections*, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulon/Weed Eater*, 93-1530, pp. 4-5 (La .1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman*, 93-1530 at p. 5, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

As discussed in prior decisions by this court, as well as the first and fifth circuits, there is no specific provision within the Office of Workers' Compensation ("OWC") Hearing Rules addressing the proper procedure for rendering decisions after

---

[1]Chief Judge Thibodeaux argues that, while appellate courts typically review workers' compensation matters under a manifest error/clearly wrong standard, where the judge rendering the decision is not the same judge who tried the matter the appropriate standard of review on appeal is de novo. *See Walker v. Union Oil Mill, Inc.*, 369 So.2d 1043, 1045 n.2 (La.1979). We are not convinced that this is the appropriate standard here, but note that our ruling remains the same whether the standard applied is manifest error or de novo review.

the death, resignation, or removal from office of the original hearing officer. However, such circumstances are addressed with respect to district and city court judges in La.R.S. 13:4209, which states in pertinent part:

> A. In all cases heard and taken under advisement of the district judge or judges of the city courts, if the judge before whom a case is tried dies, resigns, or is removed from office, or if his term expires before rendering his judgment in the case, his successor in office shall decide the case from the evidence in the record, if all of the testimony is in writing. If it is a case in which the testimony has not been reduced to writing, the succeeding judge shall decide the case from a statement of the facts, if one is found in the record, or if the parties to the suit agree upon a statement of facts. If the testimony is not in the record, and there is no statement of facts, the case shall be tried de novo.

The applicability of La.R.S. 13:4209 to OWC proceedings has been discussed extensively by the First and Fifth Circuits. *See Bass v. National Maintenance Corp.*, 95-0367 (La.App. 1 Cir. 12/15/95), 665 So.2d 782; *Ridlen v. St. Charles Manor Nursing Center, Inc.*, 94-275 (La.App. 5 Cir. 10/12/94), 644 So.2d 244, *writ denied*, 94-3039 (La. 2/3/95), 649 So.2d 410. In *Bass*, the First Circuit provided a very cogent analysis of the applicability of La.R.S. 13:4209. The court stated:

> LSA-R.S. 13:4209(B) authorizes a successor judge to sign a judgment which conforms with the judgment rendered when the judge who tried the case and rendered a decision dies, resigns or is removed from office, or if his term expires before a judgment is signed in the case. The applicability of this statute is specifically limited to successor judges of the district courts and city courts of this state and by its terms is inapplicable to OWC hearing officers who are not members of the judiciary. LSA-R.S. 13:4209(A); *see* LSA-R.S. 23:1021(12) and 1310.1.
>
> Since January 1, 1990, the administrative hearing officers are vested with original, exclusive jurisdiction over claims or disputes arising out of the workers' compensation law. LSA-R.S. 23:1310.3(E); see LSA-Const. art. V, § 16(A). The hearing officer's role in the administration of those claims or disputes is defined in the Workers' Compensation Act. The hearing officer is not bound by the technical rules of evidence or procedure other than as provided for in the workers' compensation law. LSA-R.S. 23:1317(A). In addition to those procedures set forth by statute, the director of the OWC has authority to adopt and promulgate reasonable rules and regulations, including the

4

rules of procedure before the hearing officers, according to the procedures established by the Administrative Procedure Act. LSA-R.S. 23:1291(B) (13) and 1310.1(C). All rules and regulations, properly approved and promulgated under the Administrative Procedure Act, shall be consistent with the workers' compensation law and shall be binding in the administration of that law. LSA-R.S. 23:1310.1(C).

Chapter 10 of Title 23 of the Louisiana Revised Statutes does not contain a provision similar to LSA-R.S. 13:4209, nor does it directly make the provisions of LSA-R.S. 13:4209 applicable to the hearing officer system in the OWC. In the absence of any such provision, a successor hearing officer is without authority to render a decision and/or sign an order, decision, or award if he or she was not the one who heard the matter. See LSA-R.S. 23:1310.5(A). However, pursuant to the authorization provided in LSA-R.S. 23:1291(B)(13) and 1310.1(C), the director of the OWC has promulgated hearing officer rules which govern the practice and procedure in workers' compensation proceedings. See LAC 40:I.2101-2173 ("Hearing Officer Rules"). Pertinent to the determination of the validity of the judgment signed by the successor hearing officer is Hearing Officer Rule 2105 which provides:

Any matter of practice or procedure not delineated herein and not in conflict with either the Workers' Compensation Act or these rules will be guided by practice and procedure followed in the district courts of this state as well as the practice and procedures provided for in the Louisiana Code of Civil Procedure.

The annotation following this rule indicates that it was promulgated in accordance with LSA-R.S. 23:1310.1.

Since the authority of a successor hearing officer has not been delineated by the workers' compensation law or Hearing Officer Rules, this issue will be governed by the practice and procedure applicable to the district courts of this state which is found in LSA-R.S. 13:4209. Furthermore, this court notes that Hearing Officer Rule 2159 implicitly assumes the applicability of the principles of LSA-R.S. 13:4209 to the workers' compensation proceeding in that it specifically provides for the submission of a case when a successor hearing officer is involved.

*Bass*, 665 So.2d at 784-85.

The applicability of La.R.S. 13:4209 in workers' compensation matters, as stated in *Bass* above, has also been adopted by this court. *Andrus v. Crowley Laundry & Dry Cleaners*, 03-571 (La.App. 3 Cir. 11/5/03), 2003 WL 22499626, __ So.2d ___.

*Assignment of Error #1*

5

Ms. Moore contends that the WCJ was clearly wrong is failing to consider Plaintiff's Exhibit Number 1, the Lake Charles Police Incident Report, and Plaintiff's Exhibit Number 2, the in globo notice and demand letters. Ms. Moore argues that Plaintiff's Exhibits 1 and 2 were clearly included in her Pre-trial Statement.

In her oral reasons for judgment, Judge Kellar stated:

> In determining whether the work accident caused Ms. Moore's disability, the court considered Moore's testimony, the medical reports of Dr. Clark Gunderson, the physical therapy reports, and the narrative report of Dr. Kip Patterson. The three reports offered for submission by the employer and its insurer, which were the medical report of Dr. Gregory Gidman, the report of the Eye Clinic, and the report of Dr. Rennie Culver were not considered. *Additionally, the court did not consider the Lake Charles Police Incident Report or the notice of demand letter from Moore's counsel to the employer. The documents that the court failed to consider were objected to because the offering party failed to list them on its pretrial order.*

After a review of the record, we find that Plaintiff's Exhibits Numbers 1 and 2 are clearly included in her Pre-Trial Statement. Therefore, the WCJ's stated grounds for failing to consider them in reaching her decision were manifestly erroneous. Ms. Moore's Pre-trial Statement was stamped received by the Office of Workers' Compensation on September 20, 2001, therefore, those documents should have been admitted as evidence by the court and considered before rendering judgment.

When the court of appeal finds that a reversible error of law or manifest error of material fact was made it is obligated to conduct a de novo review of the entire record and render a judgment on the merits wherever possible. *See Rosell v. ESCO*, 549 So.2d 840 (La.1989).

Based on our finding that these documents should have been considered by the WCJ in rendering her decision, we will conduct a de novo review of the record, including Plaintiff's Exhibits Numbers 1 and 2 and render a decision on this matter following our review of the following assignments of error.

6

*Assignment of Error #2*

Ms. Moore argues that the WCJ erred in failing to consider the medical reports of Dr. Lynn Foret and Dr. Paula Simien, appointed by Judge Handy at the conclusion of the trial and after receiving the parties' post-trial briefs. Ms. Moore recognizes that the opinions of court-appointed expert witnesses are not conclusive and the workers' compensation judge is entitled to rely upon their opinions or discount them completely. However, she contends that, after Judge Handy's order requesting Ms. Moore's evaluation by independent, court-ordered experts, it was error for the WCJ to fail to consider their opinions at all when reaching her decision.

Pitt Grill contends that the WCJ was not required to reach these issues as the claimant failed to sustain her burden of proving a work-related accident. It further notes that the court considered the medical testimony from Dr. Gregory Gidman and Dr. Renie Culver.

In *Brasseaux v. Abbeville General Hospital*, 97-1062, p. 5 (La.App. 3 Cir. 3/18/98), 710 So.2d 340, 343, *rev'd in part on other grounds*, 98-1066 (La. 6/5/98), 720 So.2d 673, this court held that:

> Pursuant to La.R.S. 23:1123, if a dispute arises as to the employee's condition, the workers' compensation judge is allowed to order an independent medical examination by an impartial doctor. That statute further provides that the report of the doctor shall be "prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter." La.R.S. 23:1123. However, even prima facie evidence may be overcome by other credible evidence. Although the legislature has accorded significant weight to the testimony of a court appointed physician, that testimony is not conclusive. The workers' compensation judge must still evaluate the witnesses and reach an ultimate decision in the matter.

We find the WCJ wa smanifestly erroneous in failing to consider the independent medical examinations that were ordered by Judge Handy and that were an important factor in determining the existence of Ms. Moore's claimed injuries. The

7

opinions of each party's expert witnesses were directly contradictory, and Judge Handy's appointment of further IME evaluation of Ms. Moore's condition was warranted based on the facts in the record.

Because we find the WCJ's failure to consider the independent medical evaluations ordered by Judge Handy manifestly erroneous, we conduct a de novo review of the doctor's evaluations. Following his evaluation of Ms. Moore, Dr. Lynn Foret found that Ms. Moore has degenerative changes noted on the plane films taken for the evaluation. Dr. Foret diagnosed Ms. Moore with neck pathology at the C5-6 level, which could be improved by surgery. In his opinion, surgical intervention would help her "better her condition and get back to full duty status." He recommended a cervical decompression procedure to improve Ms. Moore's condition.

Dr. Paula Simien conducted the court-appointed psychological evaluation of Ms. Moore as per Judge Handy's order. Following an examination of Ms. Moore and a review of the records and evaluations of Drs. Gunderson and Culver, as well as many of Ms. Moore's medical records, Dr. Simien found Ms. Moore's quality of life and psychological functioning had significantly reduced since her assault. Dr. Simien stated that, although Mrs. Moore has experienced a traumatic event, the data does not support a psychiatric diagnosis of posttraumatic stress disorder. She diagnosed Ms. Moore with generalized anxiety disorder, dysthymic disorder, and pain disorder associated with both psychological factors and her general medical condition. Dr. Simien recommended psychotherapy for anxiety and depression stemming from the traumatic event, pain management techniques, psychiatric consultation for medication administration, and medical and therapeutic intervention to address pain behavior.

*Assignment of Error #3*

Ms. Moore argues that, under Louisiana law, a claimant's disability is presumed

8

to have resulted from the work-related accident if the claimant was in good health before the accident , but following the accident the symptoms of the disabling conditions appear and continuously thereafter manifest themselves. She recognizes, however, that this presumption is conditional upon either the existence of sufficient medical evidence showing that there is a reasonable possibility of causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with other facts of the case, raises a natural inference through human experience that such a causal connection exists. *See Walton v. Normandy Village Homes Assoc., Inc.*, 475 So.2d 320 (La.1985); *Cook v. Dewey Rusk Flooring*, 93-1643 (La.App. 3 Cir. 8/10/94), 642 So.2d 234, *writ denied*, 94-2804 (La. 1/13/95), 648 So.2d 1343.

Pitt Grill contends that, in order for there to be a presumption that an employee's injury resulted from the work-related accident, the employee must show that the symptoms of the disabling condition commenced immediately with the accident, and manifest themselves continuously afterwards. They argue that Ms. Moore did not experience symptoms of a disabling neck injury commencing with the accident, that her neck pain was not reported until two or three days following the accident.

In *Freeman v. Best Western Richmond Suites Hotel*, 97-1462, p. 11 (La.App. 3 Cir. 4/22/98), 711 So.2d 438, 443, *writ denied*, 98-1393 (La. 7/2/98), 724 So.2d 737, this court addressed the presumption that applies in work-related accidents and injuries as follows:

> It is also important to note that an employee's work-related accident is presumed to have caused his disability when it is proven that the disabling symptoms were not manifested before the accident, the disabling symptoms appeared after the accident, and there is either medical or circumstantial evidence providing a reasonable possibility of

9

causal connection between the accident and disabling injury. *Walto*n [*v. Normandy Village Homes Ass'n*], 475 So.2d 320 [La.1985]. Although, the claimant has the burden of proving that the accident somehow caused or contributed to the disability, the exact cause need not be found. *Walker v. Halliburton Servs., Inc.*, 93-722 (La.App. 3 Cir. 3/1/95); 654 So.2d 365. Additionally, the question of the existence of a disability presents a legal and not purely medical question, which must be determined through a consideration of both lay and medical testimony. *Id.*, citing *Taylor v. Louisiana-Pacific Corp.*, 602 So.2d 48 (La.App. 3 Cir.), *writs denied*, 606 So.2d 541(La.1992).

As to Pitt Grill's contention that Ms. Moore must show that her neck pain manifested at the time of the accident in order to establish the presumption, we note there are a number of cases throughout Louisiana where the presumption was applied, even though symptoms did not manifest until after the actual accident. *See Konneker v. Sewerage and Water Board of New Orleans*, 96-2197 (La.App. 4 Cir. 11/19/97), 703 So.2d 1341, *writ denied*, 97-3137 (La. 2/13/98), 709 So.2d 760 (presumption applied where back and neck injury did not manifest until two days after the accident in question); *Frix v. Supreme Catering Services & Aetna Ins. Co.*, 444 So.2d 710 (La.App. 5 Cir. 1984) (presumption applied where plaintiff reported hip pain immediately but did not report pain in her foot until more than a month following the work-related accident). In the case of neck and back injuries, which often take a day or more to manifest with symptoms of pain, we find that Ms. Moore's statements that she did not begin to experience neck pain until the following day are not sufficient evidence to defeat the presumption that Ms. Moore's neck injury resulted from her workplace accident.

Following a full review of the record, we find that Ms. Moore has presented sufficient evidence to establish the presumption that the work-related accident was the probable cause of her injuries. Ms. Moore sought medical treatment for neck pain only three days after the armed robbery at Pitt Grill. This period of time is sufficiently

close to the work-related accident to indicate a connection between the two, barring evidence presented by the opposing party rebutting such a connection. Dr. Gunderson's records indicate that Ms. Moore had no previous injury to the neck or head, and that the day following the robbery Ms. Moore suffered from neck pain and bad headaches. The defense presented no evidence that Ms. Moore complained of neck pain prior to the robbery. For the reasons stated above, we find that Ms. Moore successfully established causation between the work-related accident and her injuries.

*Assignment of Error #4*

Ms. Moor also contends that the WCJ erred in failing to address the psychological factors present in this case. She argues that medical evidence presented by Dr. Kip Patterson indicates that, following the armed robbery at Pitt Grill, she has suffered from symptoms of acute stress disorder, which have since exacerbated to the point of posttraumatic stress disorder ("PTSD"), and also suffers from pain disorder. Dr. Patterson recommended psychotherapy to assist her in coping with the emotional trauma sustained as a result of the robbery, antidepressant therapy, and neurofeedback therapy to help her recover from PTSD. She argues that these findings by two clinical psychologists serve to carry the requisite burden of proof for a claim for medical benefits. Therefore, she contends the workers' compensation judge was clearly wrong in failing to address her entitlement to psychological and/or psychiatric treatment.

In her oral reasons for judgment, Judge Kellar indicated that the parties stipulated to the allowance of a one-time examination by Dr. Kip Patterson, a psychologist. Dr. Patterson submitted a narrative report stating:

> This patient obviously had symptoms of Acute Stress Disorder (308.3) immediately after the assault on 5-1-00. Since that time her symptoms have converted into Posttraumatic Stress Disorder, chronic (309.81), which is a fairly typical course for such a traumatic set of circumstances. The patient also gives every appearance of being well

11

adjusted prior to the assault and the assault is the cause of the PTSD she is suffering.

She also has a Pain Disorder (307.89) which is also a direct result of 5-1-00. She exhibits depressive symptoms significant enough to warrant a diagnosis of Depressive Disorder, NOS (311). This disorder is a common co-morbid problem with both pain disorders and PTSD. The neurochemistry associated with chronic pain and with PTSD degrades the neurotransmitter distribution and this is the cause of the depressive symptoms.

The Louisiana Supreme Court addressed the issue of compensation for mental injuries resulting from work-related accidents in *Sparks v. Tulane Medical Center Hosp. and Clinic*, 546 So.2d 138, 143-44 (La.1989), where it stated:

In so-called "physical-mental" injury cases, where a mental injury or illness develops secondary to an ascertainable physical injury, Louisiana courts have uniformly found that the employee is entitled to compensation benefits for any disability resulting from the mental injury and to reimbursement for medical expenses incurred in the treatment of that condition. *See, e.g., Westley v. Land & Offshore*, 523 So.2d 812 (La.1988) (employee suffered post traumatic stress syndrome secondary to physical injury caused by fall); *Droddy v. Cliff's Drilling, Inc.*, 471 So.2d 223 (La.1985) (employee suffered depressive neurosis as "emotional overlay" to physical injury caused by fall). *See also Jordan v. Southern Natural Gas. Co., supra*, 455 So.2d at 1222 ("[W]hen a plaintiff develops a disabling anxiety syndrome, traumatic neurosis, or other mental disorder as a result of a work-related physical injury, he can recover compensation benefits even if he has recovered physically from the injury.") Allowance of coverage in these "physical-mental" injury cases seems clearly appropriate under the Act's definition of "injury," which covers not only the initial injury suffered by the employee but also "such disease or infections as naturally result therefrom."

Following the supreme court opinion in *Sparks*, the Louisiana Legislature enacted La.R.S. 23:1021(7), which states in pertinent part:

(b) Mental injury caused by mental stress. Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.

(c) Mental injury caused by physical injury. A mental injury or illness caused by a physical injury to the employee's body shall not be

12

considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.

(d) No mental injury or illness shall be compensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.

In *Arwood v. J P & Sons, Inc. & L.W.C.C.*, 98-1102, pp. 10-11 (La.App. 5 Cir. 3/10/99), 730 So.2d 525, 530, *writ denied*, 99-1391 (La. 7/2/99), 747 So.2d 22, the Fifth Circuit presented the burden on the plaintiff in cases of mental injury as follows:

Thus, in order to prevail, claimant must prove by clear and convincing evidence that the physical injury caused the mental injury. Further, the mental injury must be diagnosed by a licensed psychiatrist or psychologist, and the diagnosis must meet the most current criteria established by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders. *Charles v. South Central Industries*, 96-0883 (La.11/25/96), 683 So.2d 706, 709. As further explained by the *Charles* court:

Although compensation laws are to be construed liberally in the claimant's favor, the worker's burden of proof is not relaxed. *Harold v. La Belle Maison Apartments*, 94-0889, p. 10 (La.10/17/94), 643 So.2d 752, 757; *Bailey v. Smelser Oil & Gas, Inc.*, 620 So.2d 277, 279-280 (La.1993); *Bruno v. Harbert Intern. Inc.*, 593 So.2d 357 (La.1992). Disability can be proved by medical and lay testimony; the hearing officer's factual determination whether the worker has discharged his burden of proof should not be disturbed on review absent manifest error. *Bailey*, 620 So.2d at 280; *Bruno*, 593 So.2d at 361. "[R]eviewing courts must analyze claimed disability caused by mental conditions with utmost caution in view of the nebulous characteristics of mental conditions and the possibility of symptoms being easily feigned." *Westley*, 523 So.2d [812,] at 813 [(La.1988)]; see also *Williams v. Regional Transit Authority*, 546 So.2d 150, 158 (La.1989).

*Charles*, 683 So.2d at 709.

The WCJ included Dr. Patterson's report in the list of items reviewed in reaching her decision. We find Dr. Patterson's report convincing, and we are unable

to find evidence anywhere in the record contesting his diagnosis. Therefore, we find the WCJ erred in failing to address Ms. Moore's psychological injuries and the psychologist's recommended treatment in her decision.

*Assignment of Error #5*

In her final assignment of error, Ms. Moore claims the workers' compensation judge was clearly wrong in failing to award penalties and attorney fees. Under La.R.S. 23:1201(F), an employer's failure to pay compensation results in the assessment of a penalty as well as reasonable attorney fees for the disputed claims. She contends that she is entitled to $2000.00 for the failure to instate benefits, $2000.00 for the failure to authorize medical treatment by Dr. Gunderson, $2000.00 for failure to authorize surgery, $2000.00 for failure to authorize psychiatric medical management treatment for depression, $2000.00 for failure to pay for an Open Air MRI, and $2000.00 for failure to pay Bayou Comprehensive Health Center. She also seeks attorney fees in the amount of $20,000.00.

In *Spell v. Conn Appliances, Inc.*, 97-309, pp. 11-12 (La.App. 3 Cir. 10/8/97), 702 So.2d 797, 802, this court stated:

> It is well settled that an employer or insurer should not be penalized for seeking judicial resolution of close factual issues. *Trudell v. State, Office of Risk Management*, 465 So.2d 184 (La.App. 3 Cir.1985). In the instant case, the physicians offered three opinions about the extent of Spell's disability and even disputed what was shown on the various diagnostic films. When we consider the divergence of opinion and that the defendants relied upon the court-appointed expert's conclusions, we find that the hearing officer clearly erred in imposing penalties and attorney fees. *See Watkins* [*v. Asphalt Assoc., Inc.*, 96-249 (La.App. 3 Cir. 12/14/96)], 685 So.2d 393.

In this matter Pitt Grill relied on opinions from their expert witnesses, and, while we find that Ms. Moore has met her burden of proving that her injury could have resulted from the workplace accident, the WCJ found she had not. The issue

before us has enough merit that we are unable to say the defendants were unreasonable in seeking judicial review. Therefore, we are unwilling to award penalties or attorney fees in this matter.

## DECREE

For the reasons stated above, we reverse the trial court's ruling and find that Ms. Moore met the requisite burden of proving causation between the work-related accident the night/morning of May 1-2, 2000, and her disability. We find Ms. Moore is entitled to workers' compensation benefits from the date she stopped working, subject to any credits, and payment for medical treatment as provided by law, including neck surgery as recommended by Dr. Gunderson. We also find Ms. Moore is entitled to payment for psychiatric treatment as recommended by Dr. Simien, including psychotherapy for anxiety and depression stemming from the traumatic event, pain management techniques, psychiatric consultation for medication administration, and medical and therapeutic intervention to address pain behavior. All costs of this appeal are assessed to the defendant.

**REVERSED AND RENDERED.**

15

NUMBER 03-910

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

SHERALON F. MOORE

VERSUS

PITT GRILL

AMY, J., concurring in part, dissenting in part.

I concur in the majority's opinion in part, as I agree that a reversal is required with regard to the claimant's entitlement to indemnity and medical benefits. However, I reach that result by different reasoning. I agree that the record requires a reversal insofar as the indemnity and medical benefits are concerned. However, I find a reversal appropriate after having considered the matter *de novo* as the workers' compensation judge rendering the ruling differed from the workers' compensation judge who originally heard the matter. *See Roy v. Belt*, 03-1022 (La.App. 3 Cir. 2/18/04), _ So.2d _.

I respectfully disagree with that portion of the majority opinion addressing treatment for mental injuries. My review of the record indicates that the claimant failed to demonstrate by clear and convincing evidence her entitlement to this type of injury as is required by La.R.S. 23:1021(7)(c). While the claimant presented a psychologist's report indicating a diagnosis of post-traumatic stress disorder, the employer presented similarly persuasive expert evidence refuting that diagnosis. Moreover, although not necessarily determinative in this case, I also note that the claimant's presentation of evidence on this issue indicates a lack of particularity in the diagnosis as is anticipated by La.R.S. 23:1021(7)(d). Accordingly, I respectfully dissent from the award of benefits related to mental injuries.