970 So.2d 1158 (2007)
Myung Soo KIM
v.
Esther S. KIM.
No. 07-CA-318.
Court of Appeal of Louisiana, Fifth Circuit.
October 30, 2007.
*1160 Thomas E. Dunn, Attorney at Law, Mandeville, LA, for Plaintiff/Appellant.
Derrick D.T. Shepherd, Attorney at Law, Marrero, LA, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
Plaintiff, Myung Soo Kim ("Mr. Kim"), appeals a trial court judgment dismissing his lawsuit against defendant, Esther Kim ("Ms. Kim"), and awarding damages to Ms. Kim on her reconventional demand. For the reasons which follow, we reverse and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
On November 3, 2004, Mr. Kim filed a "Suit on Promissory Notes" against Ms. Kim. Mr. Kim alleges that Ms. Kim is indebted to him on a promissory note dated June 1, 1999 in the amount of $42,000 plus interest. He asserts that she is indebted to him on a promissory note dated August 1, 1999 in the sum of $41,330 plus interest. On January 10, 2005, Ms. Kim filed an "Answer and Reconventional Demand to Suit on Promissory Notes," denying Mr. Kim's allegations against her and asserting that Mr. Kim is liable to her for damages for failing to comply with their agreement to be business partners and for failing to provide $50,000 for equipment and supplies, as agreed.
Trial of this matter began on July 6, 2006, and Ms. Kim was called to the stand. However, after just a few questions and some discussion between the attorneys and the trial judge, plaintiff's counsel moved for a continuance, and the trial judge continued the matter to August 10, 2006.
When trial resumed on August 10, 2006, Esther Kim testified that she opened a beauty supply business called Beauty Avenue in 1999. She stated that Mr. Kim had agreed to be her business partner, but he did not comply with their agreement. She stated that she used $50,000 of her own money to buy equipment and supplies to open and operate the business, and that she never received any money from Mr. Kim. She further stated that she did not sign any promissory notes.
Myung Soo Kim testified that Ms. Kim signed both the June 1, 1999 and the August 1, 1999 promissory notes at his home in the presence of his wife. He stated that he loaned Ms. Kim $100,000 because she had filed for bankruptcy, she had no credit, her husband was his friend, and Ms. Kim was his wife's friend. He stated that he gave her the money in cash and checks, but he was not able to produce copies of the checks because his bank no longer kept them. He indicated that the promissory notes were for less than $100,000, because Ms. Kim had agreed to pay back some of the money from insurance proceeds that she expected to receive. He asserted that she repaid $5,000 or $10,000, though he did not have evidence of these payments. He further stated that he never agreed to be Ms. Kim's business partner.
*1161 At the conclusion of his testimony, plaintiff, Mr. Kim, rested his case. At that time, Ms. Kim's attorney moved for dismissal of plaintiff's case on the grounds that no evidence had been submitted into the record. Plaintiff's attorney immediately requested that the trial judge allow him to introduce into evidence the exhibits that had been referred to in the previous testimony, asserting that it had "slipped his mind." The trial judge denied plaintiff's request to admit the documents into evidence, granted defendant's motion, and dismissed plaintiff's lawsuit.
Thereafter, testimony was heard on the reconventional demand. Ms. Kim testified that the Korean community is "close-knit" and that she had a good reputation before plaintiff filed this lawsuit, but she had a terrible reputation afterward. She also stated that because Mr. Kim did not comply with his agreement to provide money to start the business, she had to work at the business six days a week. She stated that she would have bought more supplies, hired help, and advertised if he had provided the money as agreed. Ms. Kim admitted that she had filed for bankruptcy prior to opening Beauty Avenue.
Mr. Kim was then called to the stand and requested that the court accept his testimony from the main demand in defense of the reconventional demand. In addition, he testified that he authorized Ms. Kim to open one credit card to help with her business, but she opened three additional credit cards, so he reported her to the police. He also stated that Ms. Kim never told him how much money she made from Beauty Avenue because they were not partners.
At the conclusion of trial on the reconventional demand, the trial court took the matter under advisement. On September 1, 2006, the trial court issued a judgment in favor of Ms. Kim on the reconventional demand, awarding her $6,000 in damages. Myung Soo Kim appeals.
DISCUSSION
On appeal, Mr. Kim sets forth five assignments of error. In his first assignment of error, he contends that "[t]he court erred by interpreting Defendant's reconventional demand as the affirmative defense and specific denial of signature on a negotiable instrument required by a defendant charged with making a promissory note." By this assignment, Mr. Kim argues that Ms. Kim should not have been able to argue at trial that she did not sign the promissory notes at issue, because signing someone else's name on a note is fraud, which is an affirmative defense that must be specifically plead in defendant's answer. He claims that Ms. Kim never specifically plead this defense and that there is no evidence that, prior to trial, he was put on notice that Ms. Kim was claiming she had not signed the promissory notes. Mr. Kim further contends that he was surprised by this defense at trial and thus, he was unable to secure additional witnesses such as a handwriting expert.
In Ms. Kim's answer to Mr. Kim's lawsuit, she set forth general denials of plaintiff's claims. In her reconventional demand, after asserting that she and Mr. Kim had an agreement to enter into business together and that Mr. Kim agreed to provide $50,000 for equipment and supplies, she asserts, "no documents were ever signed or authentication [sic] by either party." Mr. Kim contends that this statement logically means that no documents were signed concerning the alleged partnership agreement only, not the promissory notes. Ms. Kim responds that this assertion indicates that no documents related to the business were signed at all, including promissory notes.
*1162 An affirmative defense is a defense to an action which will have the effect of defeating a plaintiff's claim on its merits. Abadie v. Markey, 97-684 (La. App. 5 Cir. 3/11/98), 710 So.2d 327, 332. In the instant case, Ms. Kim contends that she did not sign the promissory notes at issue, so the signatures on these notes must be fraudulent. Fraud is an affirmative defense that must be specifically pled, and failure to do so will result in waiver of defendant's right to argue the issue. LSA-C.C.P. art. 1005; Blanchard v. Rental Service Corp., U.S.A., 05-460 (La.App. 5 Cir. 1/17/06), 920 So.2d 911, 916. However, failure to plead an affirmative defense in defendant's answer does not automatically preclude application of the defense. Zulli v. Coregis Ins. Co., 05-155 (La.App. 5 Cir. 7/26/05), 910 So.2d 437, 440, writ denied, 05-2226 (La.2/17/06), 924 So.2d 1017. LSA-C.C.P. art. 1005 provides that if a party mistakenly designates an affirmative defense as an incidental demand and if justice so requires, the court shall treat the pleading as if there had been a proper designation.
In the present case, in the reconventional demand portion of the defendant's "Answer and Reconventional Demand to Suit on Promissory Notes," she specifically claims that no documents were signed by plaintiff or defendant. Failure to make this assertion in the "answer" portion of this document does not preclude application of this defense. Further, even if the assertion that "no documents were signed" was only intended to refer to documents regarding a partnership agreement, as argued by plaintiff, we find no surprise, prejudice, or error in the trial court's decision to allow defendant to argue that she did not sign the promissory notes.
When the case came for trial on July 6, 2006, very few questions were asked of Ms. Kim before plaintiff's counsel moved for a continuance. A continuance to August 10, 2006 was granted. After the trial court indicated that he would grant the continuance, plaintiff's attorney stated:
At the point at which she denies that her signature is on these documents I still intend to raise the issue of an affirmative defense that wasn't pled or otherwise made known to the plaintiff until we had a conference in your office. . . . "
The general purpose of requiring certain defenses to be specifically pled is to give fair notice of the nature of the defense and to prevent surprise. Young v. St. Landry Parish School Board, 99-581 (La.App. 3 Cir. 12/15/99), 759 So.2d 800, 803-804, writ denied, 00-118 (La.3/17/00), 756 So.2d 1144. In the present case, it is clear that Mr. Kim's attorney was aware of Ms. Kim's claim that she did not sign the promissory notes and that Mr. Kim could not have been surprised or ambushed when this issue arose over a month later when trial resumed. Further, there is no evidence that there was insufficient time to get a handwriting expert or other witnesses during this time, and there is no indication that Mr. Kim sought additional time to prepare his case due to this affirmative defense.
Considering the record before us, we find no merit in Mr. Kim's argument that Ms. Kim's affirmative defense of fraud could not be considered and that the trial court erred by allowing testimony regarding Ms. Kim's assertion that she did not sign the promissory notes. This assignment of error is without merit.
In his second assignment of error, Mr. Kim asserts that the trial court erred by placing the burden of proof on him to prove Ms. Kim's signatures on the promissory notes. He contends that, in the absence of a denial of her signature on the notes, the notes would have been accepted as proof of the making of the loans and the *1163 burden would be on Ms. Kim to prove that she repaid the loans or was not bound to repay them.
In this assignment, Mr. Kim reiterates his argument that the trial court should not have allowed Ms. Kim to allege that she did not sign the notes, because she did not timely plead her affirmative defense. However, because we have found that the trial court did not err in allowing Ms. Kim to assert this defense, plaintiff's argument that the notes would have been accepted as proof in the absence of a denial of her signature does not apply, because such a denial was in fact made. Accordingly, we find no merit in this assignment of error.
In his third assignment of error, Mr. Kim contends that the trial court erred by not allowing plaintiff's counsel to thoroughly cross-examine Ms. Kim about potentially impeaching evidence, including questions regarding bankruptcy, whether she consulted with a different attorney than her current attorney after receiving a letter from plaintiff's attorney regarding the promissory notes, and why she paid $50,000 cash for equipment.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without the evidence. LSA-C.E. art. 401. Whether evidence is relevant is within the sound discretion of the trial court and an appellate court will not disturb that ruling in the absence of clear abuse of discretion. State Farm Mut. Auto. Insur. Co. v. Ford Motor Co., 04-1311 (La.App. 1 Cir. 6/15/05), 925 So.2d 1, 7.
Our review of the record does not reveal that plaintiff has shown an abuse of the trial court's discretion in refusing to admit several questions and lines of questioning by plaintiff's attorney. Thus, we find no merit in this assignment of error.
In his fourth assignment of error, Mr. Kim argues that the trial court abused its discretion by not allowing the introduction of plaintiff's exhibits into evidence. He notes that the promissory notes are the foundation of this lawsuit, and he admits that the introduction into evidence of the original promissory notes is required proof. He argues that he inadvertently forgot to introduce his exhibits into evidence before he rested his case, but he contends that, in the interest of justice, the trial court should have allowed him to introduce them seconds later when he moved to introduce them, rather than granting an involuntary dismissal of plaintiff's case due to a momentary oversight.
Pursuant to LSA-C.C.P. art. 1632, the normal order of trial is:
1) The opening statements by the plaintiff and the defendant, in that order;
2) The presentation of the evidence of the plaintiff and of the defendant, in that order;
3) The presentation of the evidence of the plaintiff in rebuttal; and
4) The argument of the plaintiff, of the defendant, and of the plaintiff in rebuttal, in that order.
LSA-C.C.P. art. 1632 further provides that the order of trial may be varied by the court when justified by the circumstances. The trial court has great discretion in controlling the presentation of evidence. LeBlanc v. Continental Grain Co., Inc., 95-813 (La.App. 5 Cir. 3/13/96) 672 So.2d 951, 958, writ denied, 96-1526 (La.10/4/96), 679 So.2d 1383. The decision to hold open or reopen a case for production of additional evidence rests within the discretion of the trial judge deBen v. Bobby Collins Seafood, Inc., 00-306 (La.App. 5 *1164 Cir. 10/31/00), 772 So.2d 266, 267-268. However, in order to prevent miscarriage of justice, the trial court should not hesitate to reopen a case for the taking of additional evidence, and an appellate court should not hesitate to set aside the trial court's ruling on such matters in the case of manifest abuse of discretion. Anderson v. Anderson, 98-675 (La.App. 5 Cir. 3/10/99), 732 So.2d 537, 540.
In the present case, after Mr. Kim rested his case, Ms. Kim's attorney moved for a directed verdict on the grounds that no evidence had been submitted into the record. Mr. Kim's attorney immediately apologized and asked the trial judge to admit his exhibits into evidence, but this request was denied by the trial judge. In his reasons for judgment, the trial judge indicated that he declined to exercise his discretion in controlling the presentation of evidence in order to allow plaintiff to offer his exhibits into evidence. He noted that plaintiff did not seek to introduce his exhibits into evidence until after he rested his case and defendant's attorney had moved for a directed verdict.
After reviewing the record before us, we find that the trial judge abused his discretion in refusing to allow plaintiff to introduce evidence into the record after he rested his case. Although the normal order of trial indicates that plaintiff should have moved to introduce his exhibits into evidence prior to resting his case, the record reflects that he moved to introduce them shortly thereafter.[1] As stated above, in the interest of justice, the trial court should not hesitate to reopen a case for the taking of additional evidence. Based on our review of the record before us, we conclude that, in the interest of justice, the trial judge abused his discretion in refusing to allow plaintiff to introduce into evidence those exhibits that had been previously referred to during presentation of plaintiff's case.
Accordingly, we reverse the trial judge's ruling refusing to allow plaintiff to introduce his exhibits into evidence, and we vacate the trial judge's ruling granting an involuntary dismissal of plaintiff's case. We remand the case for the trial judge to allow plaintiff to introduce his exhibits. Thereafter, defendant may again move for an involuntary dismissal, if she so chooses, or she can present her evidence, if any, in defense of plaintiff's lawsuit.
In his fifth assignment of error, Mr. Kim contends that the award of damages to defendant was against the weight of the evidence. He asserts that Ms. Kim was not a credible witness and did not sufficiently establish her claims on the reconventional demand. Ms. Kim responds that the trial judge's award of damages on her reconventional demand was based on his credibility determinations and cannot be disturbed absent manifest error.
The trial judge awarded Ms. Kim $3,000 for damages to her reputation and $3,000 for emotional distress and mental anguish. In his reasons for judgment, the trial judge stated that he found Ms. Kim to be a reliable witness and that he accepted her testimony concerning the events at issue as credible and proven. The trial judge found that Mr. Kim's failure to comply with the agreement to lend financial support to Ms. Kim's business caused damage to her reputation and mental anguish. He cited Ms. Kim's testimony that, within her culture, being sued for failure to pay a debt results in extreme disfavor and that her reputation suffered to such an extent that she was no longer able to do business in Louisiana.
*1165 This court will not set aside a trial judge's finding of fact in the absence of manifest error or unless it is clearly wrong. Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Rosell v. ESCO, 549 So.2d 840 (La.1989). In order for this court to find that the factfinder's determination warrants reversal, we must find from the record that a reasonable factual basis does not exist for the finding of the trial court. Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987).
In the present case, the trial judge found that Ms. Kim was a credible witness, and we do not find this determination to be unreasonable. However, even finding no manifest error in the trial court's determination that Ms. Kim was credible, we conclude that she did not meet her burden of proving that she is entitled to $6,000 for damage to reputation and mental anguish.
In seeking damages for loss of business reputation, a business must prove that it had a good reputation and how it was affected to its detriment. Simpson v. Restructure Petroleum Marketing Services, Inc., 36,508 (La.App. 2 Cir. 10/23/02), 830 So.2d 480, 486. Outside testimony is needed to prove that a business reputation was damaged. Id. Although Ms. Kim asserts that her personal business standing and reputation were damaged, the same considerations should apply. There was no evidence presented that Ms. Kim enjoyed a good reputation in the business community, other than her assertion that she had a good reputation before plaintiff filed his lawsuit and a terrible reputation afterward. In fact, Ms. Kim admitted that she had filed for bankruptcy prior to opening Beauty Avenue. Although she stated that she would have bought more supplies, hired help, and advertised if he had provided the money as agreed, there is no evidence that the outcome of her business would have been different. Further, although she stated that she had to relocate due to the damage to her reputation, she also indicated that she had to relocate due to "the hurricane."
Our review of the record reveals that Ms. Kim did not meet her burden of proving that she was entitled to an award for damages to her reputation. Accordingly, we reverse and vacate this $3,000 award.
In her reconventional demand, Ms. Kim asserted that she suffered emotional distress and mental anguish as a result of Mr. Kim's failure to comply with their agreement. However, the record contains insufficient evidence to establish a claim for emotional distress or mental anguish. Mental anguish which gives rise to a claim for damages must be a real mental injury that one can reasonably expect a person in such a position to suffer. State Farm Fire & Cas. Co. v. Torregano, 00-141 (La.App. 5 Cir. 9/26/00), 769 So.2d 754, 761. A plaintiff attempting to recover damages for intentional infliction of emotional distress must establish: 1) that the conduct of defendant was extreme and outrageous; 2) that the emotional distress suffered by plaintiff was severe; and 3) that the defendant desired to inflict severe emotional distress or knew that it would be substantially certain to result from his conduct. Cortes v. Lynch, 02-1498 (La.App. 1 Cir. 5/9/03), 846 So.2d 945, 951.
At trial, Ms. Kim testified that there was gossip about her in the community and that she lost her good reputation after Mr. Kim filed his lawsuit against her. However, the evidence was clearly insufficient to prove a claim for mental anguish or emotional distress. Because Ms. Kim has not proven her claims for mental anguish or emotional distress, she has not is entitled to the damages awarded to her. Accordingly, the trial court's judgment *1166 awarding $3,000 to Ms. Kim for mental anguish is hereby reversed and vacated.
DECREE
For the reasons set forth above, we reverse the trial court's ruling refusing to allow plaintiff to introduce his exhibits into evidence, and we vacate the trial court's judgment granting an involuntary dismissal of Mr. Kim's lawsuit. We further reverse and vacate the trial court's award of $6,000 to Ms. Kim on her reconventional demand. We remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] We note that plaintiff rested, defendant moved for a directed verdict, and plaintiff then moved to introduce his exhibits, all within one page of the trial transcript.