MARION F. EDWARDS, Judge.
 

 | aDefendant/appellanUemployer, Teco Energy, Inc. (“Teco”), appeals an adverse judgment in this workers’ compensation matter.
 

 On June 20, 2005, August F. Picquet, Jr. (“Mr. Picquet”), an employee of Teco for twenty-two years, fell ten feet from the cab of an L-50 tractor in the course and scope of his employment at the Teco Bulk Terminal. He landed face first in a pile of rocks and coal and was rendered unconscious. Mr. Picquet was taken to Methodist Hospital in New Orleans where he remained for three days. Upon his release from the hospital, Mr. Picquet applied for and was granted time off for family leave to recover from the accident.
 

 Mr. Picquet returned to work in mid-July of 2005. On August 29, 2005, Hum-cane Katrina struck the area. Mr. Picquet lost his home and relocated to North Carolina. He returned to work in October of 2005 when Teco reopened. However, due to medical problems, Mr. Picquet was unable to continue working and did not return to Teco until after November 27, 2005.
 

 On August 11, 2006, Mr. Picquet had cervical surgery. On August 28, 2006, Teco terminated Mr. Piquet’s employment because he was “medically unable to | «work.” Subsequently, Mr. Picquet filed a claim for workers’ compensation, which was opposed by Teco.
 

 After the hearing, the trial court rendered judgment in favor of claimant, Mr. Picquet, awarding him temporary total disability benefits from August 29, 2005 and continuing. The trial court found that the accident was work-related and that the injuries were caused by the accident.
 

 At the beginning of trial, the parties stipulated that the fall from the tractor on June 20, 2005 was a work-related accident. The parties also made the stipulations that the average weekly wage, at the time of the accident, was $1,141.93 per week. Additionally, exhibits, including the accident report prepared by Teco, the ambulance report, the depositions of Randy Williamson and Dr. Mohammed A. Khasru (“Dr. Khasru”), and the medical records of Dr. M.A. Hannan (“Dr. Hannan”) and Dr. Meda Colvin (“Dr. Colvin”) were introduced by agreement of the parties.
 

 Mr. Picquet testified at the hearing. He stated that he started working for Teco twenty-two years ago as a laborer and worked his way up to a shift mechanic with the responsibility of maintaining and repairing the company’s equipment. On the day of the accident, he was in the process of making necessary repairs, while operating an L-50 tractor at the Teco Bulk Ter
 
 *212
 
 minal. He recalls opening the door of the cab of the L-50 but not the fall.
 

 Randy Williamson (“Mr. Williamson”), a fellow employee of Teco, testified that he heard Mr. Picquet fall from the L-50. When Mr. Williamson turned around, he saw Mr. Picquet lying unconscious face down in the rocks and coal. Mr. Williamson estimated the distance from the cab of the tractor to the ground was about ten feet. Mr. Williamson called his supervisor who filled out an accident report.
 

 |4The accident report is in the record and indicates that ice was applied to both wrists, the neck and chest, and that Mr. Picquet’s feet were elevated and his jumpsuit removed. It further indicates that Mr. Picquet was taken by ambulance to Methodist Hospital.
 

 Andra Slyve (“Ms. Slyve”), who responded to the emergency call, testified that, when she and her partner arrived, Mr. Picquet was lying face down and was unresponsive. They “log rolled” him over, put him on a spinal board and collared his neck, and placed Mr. Picquet in the ambulance. At this point, Ms. Slyve drove and her partner took over the care of the patient. Ms. Slyve’s partner, Ms. Bacas,
 
 [1]
 
 testified that Mr. Picquet regained consciousness but did not complain of any pain or discomfort.
 

 The emergency room report shows that Mr. Picquet was admitted to the hospital for observation and kept in a telemetry bed for possible syncope because of the fall, his loss of consciousness, and post-traumatic amnesia. He remained in the hospital for three days before being discharged with a diagnosis of high blood pressure.
 

 Mr. Picquet testified that, after his release from the hospital, he consulted Dr. Rawls for knee pain and headaches. Mr. Picquet was in good health prior to the accident, with the exception of the hypertension discovered during his hospital stay after the accident. In mid-July 2005, Dr. Rawls released Mr. Picquet to return to work. Mr. Picquet stated that he continued to have knee pain and that he was taking Tylenol every day. After Hurricane Katrina, Mr. Picquet consulted Dr. Hannan in North Carolina about the continuing pain and a “tightening” in his stomach. Dr. Hannan referred him to Dr. Khasru, a neurologist.
 

 |sDr. Khasru conducted several tests, including a spinal tap and MRIs of the lower, upper, and chest lumbar, and the cervical area. Dr. Khasru informed Mr. Picquet that there was damage to the spinal cord, and it was not likely that Mr. Picquet would be able to continue in his chosen line of work.
 

 Ultimately, Mr. Picquet had cervical surgery at the University of North Carolina Hospital on August 11, 2006. The surgery provided some relief from the symptoms. However, Mr. Picquet still has problems with balance, walking, and with tightening in his knees and back.
 

 Since returning to Louisiana, Mr. Pic-quet has been under the care of Dr. Col-vin, who opined that Mr. Picquet’s condition would not improve and that there would be residual effects from the injury. Specifically, Mr. Picquet stated that he still has trouble with his equilibrium and is unable to sit or stand for long periods of time.
 

 Mr. Picquet’s wife, Regina Picquet (“Mrs. Picquet”), also testified. She stated that her husband complained to her about the pain after the accident. She also explained that Mr. Picquet does not normally complain and does not miss a day of work.
 
 *213
 
 Mrs. Picquet testified that, after the accident, her husband took over-the-counter pain medication and went to work in spite of the pain. When Teco reopened in October 2005 after Hurricane Katrina, Mrs. Picquet remained in North Carolina while Mr. Picquet returned to Louisiana to resume work.
 

 The record contains the deposition of Dr. Khasru, Mr. Picquet’s treating physician in North Carolina. In that deposition, Dr. Khasru testified that Mr. Picquet was referred to him in March of 2006 by Dr. Hannan. Mr. Picquet complained of stiffening of the lower extremities and difficulty walking. Dr. Khasru explained that the tests he conducted showed that Mr. Pic-quet had damage to the spinal cord. Specifically, there was a finding of a ruptured disc in his neck at | fiC6-C7 that created a serious spinal cord impingement. The condition required immediate surgery. Dr. Khasru referred Mr. Picquet to a neurosurgeon.
 

 Dr. Khasru could not be certain of the cause of the injury. He stated that it could either be degenerative or caused by trauma. He also stated that, even if the condition began as a normal degenerative process, it could have been aggravated or ruptured by a fall. Dr. Khasru could not give a definitive opinion on the cause of the injury to the spine without a CT or an MRI of the condition immediately after the fall. Ultimately, Dr. Khasru stated that the condition may or may not be related to the fall on June 20, 2005. However, Dr. Khasru did state that most such degenerative injuries occur spontaneously. Dr. Khasru’s reports indicate the pain began in October 2005.
 

 Dr. Hannan’s medical records are contained in the record. They show that Mr. Picquet saw Dr. Hannan on November 15, 2005 for problems with tightness of the right leg and knee muscles. The notes also indicate that Mr. Picquet told Dr. Hannan he had a fall a few months earlier, but he was not injured. Dr. Hannan’s report indicates the pain began in November 2005.
 

 Defendant/Teeo presented an evaluation from its expert, Dr. Douglas Swift (“Dr. Swift.”). Dr. Swift reviewed all of Mr. Picquet’s medical records and interviewed Mr. Picquet. Dr. Swift’s opinion was the same as that of Dr. Khasru. Neither doctor could definitively state with medical certainty that the fall caused the injury. Dr. Swift also stated that a spinal injury resulting from trauma would likely be symptomatic from the injury or shortly thereafter.
 

 Unfortunately, Dr. Rawls’ records were destroyed in Hurricane Katrina and were not available to the trial court or to this Court.
 

 On appeal, Teco assigns five errors for our review. In the first two assignments, Teco questions the trial court’s finding of facts by attacking the 17credibility of Mr. Picquet. In the third assignment, Teco asserts the trial court erred in finding a causal link between the accident and the medical condition. In the third assignment, which is related to the credibility issue, Teco argues the trial court erred in denying its motion to keep the record open for the deposition of Dr. Hannan. In the fourth assignment of error, Teco argues in the alternative that, if compensation is due, the trial court erred In finding that those benefits are due from August 29, 2005. In the final assignment, Teco argues that the trial court erred in awarding continuing temporary total disability benefits because Mr. Picquet is now otherwise employed.
 

 The main thrust of Teco’s argument opposing the trial court’s finding of causation between the fall and the spinal cord injury is that the onset of the symp
 
 *214
 
 toms were too far removed in time from the accident and that there is no medical opinion to justify a finding of causation. Teco asserts that medical records show that the symptoms began in November 2005 and, therefore, could not have been caused by the fall that happened five months earlier. Further, Teco argues that Mr. Picquet’s testimony that he was in pain prior to November is not credible given the medical evidence.
 

 As in other civil suits, the employee in a workers’ compensation proceeding initially has the burden of establishing his disability and its causal relation with the employment accident by a preponderance of the evidence.
 
 [2]
 
 In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. A claimant’s disability is presumed to have resulted from an accident; however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously | «manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition,- or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection.
 
 [3]
 

 In evaluating the evidence, the trier of fact should accept as true the uncon-tradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony.
 
 [4]
 

 The trial court’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error.
 
 [5]
 

 Teco’s argument that Mr. Picquet’s testimony is not credible because the first documented complaints of leg tightness occurred in November of 2005 when Mr. Picquet went to Dr. Hannan in North Carolina. However, Mr. Picquet testified that he went to Dr. Hannan in October 2005 because of the pain. Dr. Hannan gave him some sample medication and a prescription for Tylenol 3. Mr. Picquet explained that Dr. Hannan did not charge a fee because Mr. Picquet was an evacuee from Hurricane Katrina.
 

 The Teco argument fails to take into account that Dr. Rawls, who treated Mr. Picquet immediately after the fall, lost the medical records in Hurricane Katrina.
 

 I9A careful reading of Mr. Picquet’s testimony shows that, while he gave both doctors in North Carolina an approximate date of October or November 2005 for the beginning of the symptoms, his meaning was that it was about that time the pain became severe enough to consult a physician. Mr. Picquet testified that he had
 
 *215
 
 pain since the accident, but he “thought it would go away.”
 

 In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness’ uncontradicted testimony, although the witness is a party, absent “circumstances casting suspicion on the reliability of this testimony.” The trial court’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error.
 
 [6]
 

 We find no reason to disturb the findings of the trial court regarding causation in the matter before us. Mr. Picquet’s testimony, as well as that of his wife, shows that he was experiencing pain since the accident. His work record in the record before us supports his testimony that he was an exemplary worker for twenty-two years before the accident happened and that he was in good health. Although the medical evidence is not conclusive that the injury was caused by the fall, there is sufficient testimony to legally conclude that the fall caused the injury. There is medical evidence that the type of injury sustained by Mr. Picquet could have been caused by trauma. The doctors stated that the symptoms would likely occur at the time of the trauma or shortly thereafter. However, there is testimony that Mr. Picquet did experience symptoms immediately after the accident, although it is not medically documented. Causation is not necessarily and exclusively a | inmedical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence.
 
 [7]
 

 Considering the seriousness of the fall and the circumstances and evidence, both expert and lay, reviewed by the Workers’ Compensation Court in this matter, we do not find an abuse of discretion in the finding that the accident was the cause of the injury. We find no merit in this argument.
 

 Teco also argues the trial court erred in denying its request to hold the hearing open to allow Teco time to depose Dr. Hannan.
 

 At the end of the trial, the court held the matter open for about one month for submission of post-trial briefs. Teco filed a motion to keep the trial open to allow it time to take the deposition of Dr. Hannan. In that motion, Teco accused Mr. Picquet of perjury and fraud in his statement that he saw Dr. Hannan once before November 2005. Mr. Picquet objected to that motion on the basis that Teco had ample time for discovery in the two years this matter was pending. The trial court denied the motion.
 

 The decision to hold open or reopen a case for production of additional evidence rests within the discretion of the trial judge.
 
 [8]
 
 Teco did not motion the court to hold the matter open for the purpose of obtaining additional evidence. Rather, it sought to show that Mr. Picquet lied about the date of his first visit to Dr. Hannan. Under these circumstances, we see no reason to disturb the trial court’s ruling on this motion.
 

 Teco also argues that Mr. Picquet is not entitled to Temporary Total Disability (“TTD”) benefits because he is serving as the pastor of his church and is receiving $600 per month for the service. Thus, Teco concludes that Mr. Picquet is capable of
 
 *216
 
 some form of employment. In the alternative, Teco argues the trial In court erred in awarding benefits from the date of Hurricane Katrina. Teco points out the Mr. Picquet worked from the time of his medical release in July of 2005 until Hurricane Katrina and returned to work in October of 2005. Mr. Picquet testified that he received short term benefits from June 20, 2005 until July 18, 2005, when he returned to work. He was unable to return to work after November 27, 2005, and he received benefits from December 5, 2005 until May 21, 2006. He was terminated on August 28, 2006.
 

 We find the trial court abused its discretion in awarding benefits dating from August 29, 2005, the date of Hurricane Katrina, absent a showing that Mr. Pic-quet was unable to work due to the disability. Accordingly, we reverse that part of the judgment and find that Mr. Picquet is entitled to benefits from November 28, 2005 and continuing.
 

 In order to receive benefits for TTD, a claimant in a workers’ compensation case must prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment due to his injury. A claimant must introduce objective medical evidence to establish by clear and convincing evidence that he is unable to engage in any type of employment.
 
 [9]
 
 Thus, the question is not whether the workers’ compensation claimant could perform the previous work but, rather, whether the claimant could perform some sort of work.
 
 [10]
 

 We find the claimant has proven his entitlement of TTD benefits from the date of the injury until his return to work in July. However, we do not find that Mr. Picquet has met his burden of proof by clear and convincing evidence that he is not able to engage in gainful employment of some type once he returned to work in July 2005. While the medical evidence establishes that he will not be able to | ^return to his former job, and will suffer some residual ill effects from the injury and the surgery, there is insufficient evidence to show that Mr. Picquet cannot find some other type of employment.
 

 Mr. Picquet’s petition does not specifically pray for Supplemental Earnings Benefits (“SEBs”); it makes a request for Permanent Total Disability (“PTD”) status. With the posture of this case directed toward causation and the restoration of weekly benefits at trial, it appears that the hearing officer did not consider an award of SEBs.
 

 To be entitled to receive SEBs, the claimant must establish by a preponderance of the evidence that he is unable to earn 90 percent of the wages he earned at the time of his injury, and the burden of proof then shifts to the employer who must prove that the claimant is earning less than he is able to earn.
 
 [11]
 

 The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker’s compensation law is to be liberally construed in favor of coverage .... “In determining if an injured employee has made out a prima facie
 
 *217
 
 case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee’s ability to earn a wage.”... Once the employee’s burden is met, the burden of proof then shifts to the employer, who, if he wishes to contend that the employee is earning less than he is able to earn so as to defeat or reduce supplemental earnings benefits, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region ....
 
 [12]
 

 Given the medical evidence and the testimony of the claimant, we believe the evidence is sufficient to prove that the claimant may be entitled to SEBs. A1 of the doctors, including his current treating physician, Dr. Colvin, agree that Mr. Pic-quet will suffer residual effects from the injury. According to Dr. Colvin’s | ^report, Mr. Picquet has a wide-based gait, decreased reflexes, numbness, and spasms in his legs. Dr. Colvin recommended a functional capacity evaluation in December of 2007. However, there is no indication that the recommendation was acted upon.
 

 In conclusion, we find the trial court correctly found that Mr. Picquet sustained a work-related injury and that there is a causal connection between the accident on June 20, 2005 and Mr. Picquet’s injury that entitles him to benefits under Workers’ Compensation Law. However, we find that those benefits are due from November 28, 2005, but do not constitute TTD.
 

 Accordingly, we reverse the finding that claimant herein is awarded TTD benefits, and we amend the judgment to award benefits from November 28, 2005. In all other respects, the judgment of the trial court is affirmed as amended. We remand the matter to the trial court for a determination of the award of SEBs due claimant pursuant to LSA-R.S. 28:1221(3).
 

 JUDGMENT REVERSED IN PART; AMENDED IN PART AND AFFIRMED AS AMENDED; MATTER REMANDED.
 

 [1]
 

 . Ms. Bacas' first name does not appear in the record.
 

 [2]
 

 .
 
 Delgado v. Barriere Const. Co., Inc.,
 
 98-741 (La.App. 5 Cir. 1/26/99), 726 So.2d 489, 490-91.
 

 [3]
 

 .
 
 Walton v. Normandy Village Homes Assoc., Inc.,
 
 475 So.2d 320, 324 (La.1985) (citations omitted).
 

 [4]
 

 .
 
 West v. Bayou Vista Manor, Inc.,
 
 371 So.2d 1146 (La.1979).
 

 [5]
 

 .
 
 Bruno v. Harbert Int’l Inc.,
 
 593 So.2d 357, 361 (La.1992).
 

 [6]
 

 .
 
 Id.
 

 [7]
 

 .
 
 Haughton v. Fireman’s Fund Am. Ins. Companies,
 
 355 So.2d 927, 928 (La.1978).
 

 [8]
 

 . Kim v. Kim,
 
 07-318 (La.App. 5 Cir. 10/30/07), 970 So.2d 1158.
 

 [9]
 

 .
 
 Fassitt v. Jefferson Parish Hosp. Serv.,
 
 07-695 (La.App. 5 Cir. 12/27/07), 974 So.2d 757, 760 (citations omitted).
 

 [10]
 

 .
 
 Pardee v. Forest Haven Nursing Home,
 
 42,-321 (La.App. 2 Cir. 6/20/07), 960 So.2d 1216; LSA-R.S. 23:1221(1)(C).
 

 [11]
 

 . LSA-R.S. 23:1221(3);
 
 Newsome v. New Orleans Saints,
 
 08-311 (La.App. 5 Cir. 10/14/08), 996 So.2d 637.
 

 [12]
 

 .
 
 Smith v. La. Dep’t of Corrections,
 
 93-1305 (La.2/28/94), 633 So.2d 129, 132-33 (citations omitted).